Weigel v. Weigel.

PHILIP WEIGEL, JR.,

*v.*

ALICE WEIGEL.

[Filed September 20th, 1902.]

1. The continued separation of the complainant who is prosecuting a suit for divorce from bed and board on the ground of the alleged extreme cruelty of the defendant, cannot, during the pendency of such a suit, be held to be an obstinate desertion, nor can part or the whole of the period of the pendency of such suit be computed as part of period of desertion in a subsequent suit between the same parties for divorce on the ground of desertion. If the wife, pending her suit charging her husband with extreme cruelty, continued to cohabit with him, she would prejudice her suit. Her absence is therefore not obstinate but justifiable. In such case it is of no significance whether she succeeds or fails in her suit.

2. It is essential that the wife's suit be a true presentation of what she believes to be an actual grievance. If it be shown that it was in truth based on allegations of fact which she personally knew to be false, it is a fraud on the court, on the law and on the defendant attacked by it, and its pendency is no defence to a subsequent suit for desertion by the husband.

3. That an action was begun under the advice of counsel is no defence unless, in addition to that fact, it is shown by the party setting it up, that all the facts pertinent to the suit which were within the knowledge of the party were truly stated to counsel.

On bill for divorce, answer and proofs.

The bill of complaint in this case was filed on the 24th day of June, 1901, as by the complainant husband, praying for a divorce from the defendant wife, because of her alleged desertion.

The bill states the marriage of the parties on November 3d, 1880, at New Brunswick, in this state, and their continued subsequent residence there up to the 17th day of July, 1897, when, the bill alleges, the defendant deserted the complainant, and that since that time she has resided at Palmyra, in the county of Burlington. The complainant charges that, for more than three years last past, the defendant has willfully, continuously and obstinately deserted him.

The bill further sets forth that, after having secretly deserted him, the defendant filed against him, in this court; a bill for divorce from bed and board for alleged cruelty, and that, after hearing on the merits, the bill was dismissed, by the decree of this court, on the 27th day of September, 1900, which declared that she had deserted the home of complainant without just cause; that she thereupon took an appeal from that decree, and that, on the 18th day of June, 1901, it was, in all things, affirmed by the court of appeals.

The defendant, by her answer, admits the marriage and residence of the parties, but denies that she ever deserted the complainant at any time. She admits that she filed her bill of complaint in this court, praying a divorce from bed and board because of alleged cruelty of the complainant, and that, after due trial, her bill was dismissed, but she denies that the court decreed that she had deserted and left the complainant's home without just cause. She admits that she appealed from the decree dismissing her bill, but she makes no response to the allegation of her husband that her appeal was dismissed. Pending this suit, and before the hearing, the solicitor who filed the

Weigel *v.* Weigel.

answer retired from the cause, and her present solicitor was substituted in his place. On the pleadings above recited the cause came to a hearing.

*Mr. Warren R. Schenck* and *Mr. Alan H. Strong,* for the complainant.

*Mr. Spencer Simpson* and *Mr. Clarence T. Atkinson,* for the defendant.

GREY, V. C.

The marriage of the parties and their residence in this state are undisputed facts in this cause. It is conclusively proved and undenied that the defendant, on July 18th, 1897, surreptitiously, without the knowledge and against the will of her husband, left his home and went to Palmyra. There is no dispute that she stayed there, separate and apart from her husband, of her own free choice, and that she persisted in so staying, despite his frequent written invitations to her to return, many messages sent by other persons, and several personal visits made by him at her house in Palmyra, seeking a conference with her to arrange for her return to his house, at all of which she refused even to see him. By his letters he offered to pay her debts and the expense of new clothing and of her return, and almost every inducement which might tend to influence her to that end. To all these efforts she constantly gave but one answer, she would not go back to him.

These solicitations on the husband's part continued from November, 1897, about four months after the defendant voluntarily left his house, until the month of June, 1901. The evidence which establishes the above-recited condition of facts is wholly undenied, and, if unexplained by some conclusive defence, sufficiently proves that the defendant willfully, continuedly and obstinately deserted the complainant, for more than two years next before June 24th, 1901, when the complainant filed his bill for relief in this cause. On such a showing the complainant would, under our statute, unquestionably

be entitled to a decree for divorce because of the defendant's willful, continued and obstinate desertion.

The defendant's resistance to the granting of such a decree is based upon a single point. She contends that during substantially the whole of the two years of her alleged desertion her own suit for divorce from bed and board, because of her husband's extreme cruelty, was pending, and that while she was thus prosecuting such a suit against him, she could not lawfully cohabit with him, and cannot therefore be held to have willfully or obstinately deserted him. Counsel for the defendant cites, in support of this proposition, the cases of *Marsh* v. *Marsh, 1 McCart. 315; Graeff* v. *Graeff, 25 Atl. Rep. 704; Chipchase* v. *Chipchase, 3 Dick. Ch. Rep. 549; affirmed on appeal, 4 Dick. Ch. Rep. 594; Drayton* v. *Drayton, 9 Dick. Ch. Rep. 298.*

These cases were suits in which desertion was charged, and during part of the time of separation constituting the offence a previous suit for divorce for alleged adultery had been pending. In the *Chipchase Case*, Vice-Chancellor Green (whose opinion was unanimously adopted by the court of appeals) declared: "Argument is not necessary to enforce the position that a party who is prosecuting a suit for divorce on the ground of adultery cannot maintain that the separation of the opposite party, during the pendency of such suit, is obstinate, as understood with reference to desertion as the ground of a divorce." The case of *Chapman* v. *Chapman, 10 C. E. Gr. 396*, is to the same effect.

The general proposition appears to be indisputable that the separation of one spouse from the other, pending a suit between them for divorce, is justifiable, and is therefore not an obstinate desertion during that period. If the previously-pending suit were for divorce on the ground of adultery, cohabitation would ordinarily condone the offence, and deprive the complainant of her remedy. The same principle applies if the divorce sought is a limited one from bed and board on the ground of extreme cruelty. For if the wife (who is, in such cases, usually the complainant) continues to live with her husband, pending such a suit, she throws doubt upon the extremeity of the cruelty of which she alleges she is the victim. Ordinarily, cohabitation is

proof that the treatment of the wife by the husband is not cruel, and is usually of itself a contradiction of that which the wife must, in such cases, establish, namely, a condition of such extreme discomfort and wretchedness as incapacitates her to discharge the duties of a wife, or seriously endangers her health.

But in all the cases which state the proposition in general terms, there is an assumption that the case which relieves from the duty of cohabitation, pending it, is one brought in good faith, in order to submit to the consideration of a court a condition of facts which the complainant really believes entitles her to the relief sought. In such a case it is of no significance whether the complainant succeeds or fails in the suit by which she presents her claim. Her separation, pending it, is not obstinate, for the reason that there is a justifiable cause for it, and that it is her right to have a judicial determination of what she believes to be real grievance, unembarrassed by presumptions adverse to her which would necessarily attend upon continued cohabitation with her husband.

When, however, it is shown that the wife's previous suit, the pendency of which is set up to excuse her apparent desertion, was based on allegations which were known by her to be false when they were submitted to the court, and when her testimony in that suit, in support of those allegations, is proven to have been untrue by many disinterested witnesses, so that it is made quite clear that her previous suit was a false pretence, and not a genuine presentation of a believed grievance, the excusatory effect of the pendency of the previous suit is wholly lost. Such an exhibition shows that the proceeding was a fraud upon the court, on the law, and on the defendant attacked by it. Its pendency is no answer to proof that the wife willfully, continuedly and obstinately abandoned her husband. Indeed, it may be additional evidence of the obstinacy of her determination to desert her husband, and escape from her marital duty.

This exception to the above-stated rule is recognized in all the cases which consider this phase of the question. Chancellor McGill, in *Drayton* v. *Drayton, 9 Dick. Ch. Rep. 302,* refers to the element of good faith as necessary to prevent the time consumed by such a suit from being computed as part of the statu-

tory period of desertion. In *Porritt* v. *Porritt, 18 Mich. 420,* the question of the good faith of the previous suit is discussed as an essential matter to its effective use as a defence. Mr. Bishop designates such a sham proceeding as a fraud and a pretence, which will not justify the desertion. *Bish. Mar. D. & S. § 1758;* see, also, *1 Nels. Mar. & D. 146.*

It is therefore of importance to inquire, in the cause now under consideration, what was the nature of the previous suit, which the defendant wife claims, in this cause, justified her separation from her husband. The proceedings in that case have been put in evidence in this suit. The bill in that case, as amended, was filed on July 20th, 1897, and asked a decree of divorce from bed and board because of the extreme cruelty of the complainant in the present case. The wife's charges of cruelty were that her husband, since 1889, had habitually cursed and reviled her, and accused her of adulterous conduct; had declared, in the presence of her children and to strangers, that their mother was a prostitute and their paternity unknown; that he smashed dishes and made murderous threats against her, declaring he would poison her; that he refused to furnish clothing and food for the family, threatened to put her in an insane aslyum, declared he intended to drive her crazy, conducted himself indecently before their children, forced her by such "unbridled sexual ferocity" that she suffered seven miscarriages, and habitually made upon her such sexual attacks that thereby, on several occasions, he almost killed her; that she had always been dutiful and faithful to her husband, and endured her marital sorrows because of her love and devotion to her children, until the sheerest necessity compelled her to leave her husband.

These were the allegations. A glance at them shows that had but a small portion of them been sustained by proof they would have justified the decree asked. It should also be noted that almost every incident here stated must, if it ever happened, have taken place in the personal presence of the wife.

It is unnecessary to review the evidence presented in that case. The charges were not only shown to be false, but to have no foundation whatever. The wrongs charged must have been so

Weigel *v.* Weigel.

essentially within the personal cognizance of the wife that it is impossible to resist the conviction that their falsity was known to the wife when they were formulated and stated in the bill of complaint.

The evidence submitted in this cause shows the real reason which induced the wife to bring the previous suit and explains the whole transaction. It is here conclusively proven that the differences between the wife and her husband were not those set up in her bill of complaint, and that those allegations were the merest subterfuge. The actual truth was that the husband disliked the wife's sister and forbade her the house. The wife determined to disobey his command, and for a period surreptitiously harbored her sister. Because of quarrel on this account, she, for six months before leaving her husband, bolted her chamber door against him, and refused to take her meals with him or to care for his household. She and her sister contrived a villifying anonymous letter, which they sent to him, threatening to tar and feather him. She secretly arranged to leave him for weeks before she departed, and sent clothing and goods out of the house to various places in preparation for her leaving. She had a definite plan of action to compel her husband to divide his property with her, by which she might be enabled to live apart from him. This plan was opened to the husband, in the presence of his wife, by her father. The wife herself discussed it with her sister, in the presence of the servants. She said "if she left him he would have to give her half what he was the owner of, and then she would go down and live with her mother and Miss Welsh (her sister) and take the children with them." She sought to find out what her husband was worth from his bookkeeper. She declared that she hated her husband so that she could not sit beside him, and that she would break him and make him a poor man if she could. The only complaint against him that she ever gave to these persons before whom she discussed her intentions to leave her husband was that he did not like her folks, and particularly her sister Mary.

This was her feeling toward her husband in the late spring of the year 1897 and up to the time of her leaving her husband's home. This she did on July 17th of that year, when she had

secured as much clothing and household effects as suited her purpose. Her going was secret from her husband, and was effected while he was away from home, and without any immediate quarrel or difference between them. Within three days after she thus voluntarily left him she brought the suit, the pendency of which is now set up as her only excuse for her desertion of his home. When testimony in the wife's suit was about to be taken she sought out one of the most important witnesses and tried to induce her to testify falsely in support of the allegations of the bill of complaint. While that suit was being prosecuted the husband frequently besought her to return. His requests began in September, 1897, and were continued for more than three years, in various forms—personal messages, letters and the intervention of friends. The horrible charges contained in the bill of complaint were in process of investigation during the very period that the husband was sending poetry and loving messages to the wife to induce her to return. These charges were shown to be untrue, and still the husband invited her return.

A decree was made in this court on September 27th, 1900, dismissing the wife's bill. Notwithstanding he had defeated her in her suit, he continued to send her requests to come back. She appealed, and pending the appeal he kept up his efforts for reconcilation. All direct application to her for personal interviews, or for answer to letters having failed by her refusal, indirect efforts were made through other parties, the minister, political friends, and finally through her landlady. This last application to Mrs. Weigel was made some time in the late spring or early summer of 1901, while her appeal was pending in the court of errors and appeals. To this landlady Mrs. Weigel declared that she hated her husband with a cruel and bitter hatred; that she would not trust herself where he was, because she might do something which she would be sorry for; that she would never live with him again, and would commit suicide if she thought she had to go back to him, for she would rather be dead.

These statements are declared by Mrs. Weigel's landlady to have been repeatedly made to her by Mrs. Weigel in some half-

dozen conversations in which the landlady sought to induce Mrs. Weigel to return to her husband. Mrs. Weigel's replies were reported to Mr. Weigel, and they made an end of further attempts, on his part, to induce his wife to return to him.

On the 18th day of June, 1901, the court of appeals affirmed the decree of this court in Mrs. Weigel's suit, dismissing her bill of complaint.

On the 24th day of June, 1901, Mr. Weigel filed his bill of complaint in this cause for an absolute divorce because of desertion by Mrs. Weigel for more than two years, and issued subpœna against her and sent the same to the sheriff to serve.

The proof is clear and convincing that, from the time Mrs. Weigel voluntarily left her husband's home, in July, 1897, until after the bill was filed in this case and subpœna issued to the sheriff, Mrs. Weigel, in spite of constant solicitation on the part of Mr. Weigel to return to him, obstinately refused to do so.

After this suit had been brought by Mr. Weigel for absolute divorce, a letter was written by Mrs. Weigel's former attorney in her divorce suit, stating that Mrs. Weigel and her children were desirous of returning to his home, &c. This letter is dated "Camden, June 22, 1901," it should be noted is two days before Mr. Weigel filed his bill for divorce in this cause. The envelope in which it was carried in the mail is also produced. It is postmarked on one side "Palmyra, N. J., June 26, 4 P. M.," and on the other side "New Brunswick, June 26, 7 P. M.," and was received by Mr. Weigel on June 27th, in due course of mail. It may have been an accident that the posting of this letter occurred so long after its date. The complainant, Mr. Weigel, insists that the letter itself was antedated in order to appear to have been an offer by Mrs. Weigel to return to him made before he began his suit for divorce. The transaction has that color. It certainly was not an offer to return made by Mrs. Weigel before this suit began. Mr. Weigel's right to a divorce was complete, and suit had been begun by him to enforce it several days before this letter came to him.

Since this suit was begun Mrs. Weigel has written several letters to Mr. Weigel, in August of 1901, asking him to take her back as his wife. These offers of Mrs. Weigel to resume

marital relations were all made after Mr. Weigel's right to a divorce had become perfect, and after he had begun this suit against Mrs. Weigel for an absolute divorce. Such offers are, of course, of no avail as a defence to this suit. Indeed, in view of the disclosures of the condition of her mind towards him in the late spring and early summer of 1901, made by Mrs. Walters, the landlady, it would appear to have been dangerous for Mr. Weigel to have accepted these offers and received Mrs. Weigel back into his home. They were made but a few months after she declared that she "hated him with a cruel and bitter hatred, and was afraid to trust herself where he was, because she might do something which she would be sorry for." There had been no communication, personal or otherwise, between them since Mrs. Weigel made these violent declarations against her husband, and the sincerity of her professions of kindly feeling might well be doubted. To all of the proof of the pretentious character of Mrs. Weigel's suit, based, in large part, as the evidence in this cause shows, upon her own declarations, but one reply is made. Mrs. Weigel was put upon the stand as a witness. She was asked:

"State whether or not it was in pursuance of advice you received from counsel that you left your husband's home and commenced suit in this court against him for divorce from bed and board?"

She answered, "It was."

It thus appears that, as a witness on the stand, she had abundant opportunity, had it been possible to do so, to contradict or explain the overwhelming proof, given on the part of the complainant in this suit, showing that her suit was a sham and a pretence, not based upon any cruelty on the part of her husband, as was alleged in her complaint, but upon her hope and expectation that she might thereby compel him to divide his property with her, and enable her to live, separate and apart from him, with her sister. Mrs. Weigel was personally present at most of the hearings at which the testimony above reviewed was presented. It plainly impugned her personal conduct, and called forcefully for her appearance as a witness in refutation

of the serious imputations put upon her. She went upon the stand and made no denial of any of the damaging proofs submitted.

As to the defence that Mrs. Weigel acted under advice of counsel in bringing her suit, all that is proven is that she left her husband's home and commenced her suit in pursuance of advice received from her counsel. She was not asked, nor does it anywhere appear that she stated to her counsel, all the facts within her knowledge. The matters set up in her bill must have been within her personal knowledge and experience, if they ever happened. The proof in her suit was clear that they never did happen, and the proof in this case is that they were not, in truth and good faith, the causes which led her to seek a divorce, as she deposed in her affidavit annexed to her bill.

That a course of action was taken under the advice of counsel is no defence, unless, in addition to that fact, it is shown, by the party setting it up, that all the facts pertinent to the suit which were within the knowledge of the party were truly stated to the counsel. There is no attempt to make such proof. What Mrs. Weigel told her counsel, as to the facts of the case in which her suit was brought, was not in anyway shown in this cause. The undisputed proof here exhibited is that the wife filed her bill for divorce, stating grounds which she personally knew to be false; that these were not, in truth and good faith, the causes which led her to make her complaint; that the real reasons, which are fully exposed in this suit, were utterly unworthy of legal consideration. Merely proving that counsel advised such a suit, without also showing that all the facts within the party's knowledge were stated to him, is no justification. Nor, in my view, would proof that counsel and client mutually knew the actual truth, yet agreed to present a case which they knew to be false in its essential allegations of fact, be any better. The criticism of the former suit is not that it was a mistaken claim of a legal right, but that it was based on a statement of facts which was essentially false to the knowledge of the complainant.

A decree in favor of the complainant for an absolute divorce, because of the defendant's willful, continued and obstinate desertion, will be advised.