The parties were married in 1912 and cohabited until 1916, when the defendant deserted the petitioner. On April 27th, 1917, the petitioner commenced a suit for divorce on the ground of adultery, wherein a citation was issued and returned as having been served personally on the defendant. In that suit the defendant was apprehended under authority *Page 265 
of a writ of ne exeat, and released from custody on January 22d 1918, since which time no further steps have been taken in the cause. Without dismissing, or in any other way terminating, the proceedings just referred to, the petition in this cause was filed on July 2d 1922, alleging desertion by the defendant, commencing in July, 1916. Thus, it will be seen that only the period from July, 1916, to April 27th, 1917, had expired before a suit for divorce was instituted between the parties. The master reports that none of the time since the date last aforesaid, and before the filing of this petition, can be counted in the period of desertion under the authority of Marsh v. Marsh, 14 N.J. Eq. 315,
and the cases which have since followed, and, consequently, that there was no obstinacy to the desertion during the two years next preceding the commencement of the suit (Gordon v. Gordon, 89 N.J. Eq. 535) or at any time since the first nine months, or April 27th, 1917. To this the petitioner excepts.
The legislature of this state has prescribed the only grounds upon which this court is authorized to grant decrees of divorce, and one ground is that of desertion. But it is not every description of separation by one of the spouses from the other that comes within the kind of desertion described by the act. The law-making body has gone further, and said that not only must the desertion be willful and continuous, but that it must be obstinate, or against the wishes and desire of the complaining spouse. McGean v. McGean, 63 N.J. Eq. 285. In the MarshCase it was said by the chancellor that there was apresumption that a wife who absents herself from her husband's home pending a suit by him against her for adultery does so with his assent, because it is clear that one would not sue a spouse for that offense and still desire to have the latter cohabit with him. The only exceptions to this rule with which I am familiar were in cases such as Weigel v. Weigel, 63 N.J. Eq. 677;VonBermuth v. VonBermuth, 76 N.J. Eq. 487, and Byrne v.Byrne, 93 N.J. Eq. 5. In the first of these cases, it was conclusively shown that the first suit by the defendant was not only defeated, but overwhelmingly shown not to have been brought in good faith. *Page 266 
In the Von Bermuth Case, the husband succeeded under a counter-claim, charging desertion for the statutory period, a necessary part of which was included in the time between the filing of his wife's petition and the filing of the counter-claim, and the language of Vice-Chancellor Howell (atp. 494) clearly indicates that this fact would have operated as a bar to the relief sought by the counter-claimant, were it not for the application of the exception pointed out in the WeigelCase, to wit, lack of good faith. So, in the case of Byrne
v. Byrne, the chancellor, after reviewing and referring to practically all of the authorities in this state, found that the offense of adultery had been condoned after the institution of a suit therefor and more than two years before the institution of the suit he was there deciding. Obviously, a suit for adultery is forever put an end to by the complaining party condoning the offense upon which it is predicated, and, henceforward, as the chancellor decided, it ceases to be "pending" in good faith.
Upon first reading it would appear as if the exceptions must be overruled by reason of the decision in McLaughlin v.McLaughlin, 90 N.J. Eq. 322. In that case, the first petition in point of time was filed on October 28th, 1916, and alleged actual desertion in 1912. As in this case, the cause was permitted to sleep, and never carried to final hearing until after the filing of a new and entirely independent petition on October 30th, 1918, alleging constructive desertion instead of actual desertion. Then a motion was made in the suit under the petition of 1916 to dismiss the original petition as of a date that would clear the two years next preceding the filing of the second petition. Although the chancellor denied the application, he clearly intimated that "in the domain of reason" the first suit should not operate as a bar, but found himself faced with the decision in Johnson v. Johnson, 65 N.J. Eq. 606. The casesub judice presents circumstances that appear to differentiate it from any to be found in our records except an unreported case to be mentioned hereafter. *Page 267 
The entire rule springs from a brief statement of law enunciated by Chancellor Green in the Marsh Case (at p. 318), where he says:
"The presumption must be, therefore, if the wife absent herself from his home, pending a suit against her for adultery, that such separation is by his procurement or with his assent."
This language has been referred to and commented upon in almost, if not every, case upon this point. A reading of it will show that by its terms it is a mere presumption (not a conclusive presumption), and, therefore, that it may be rebutted and overcome. It does not amount to a rigid rule of law to be applied as, for example, is the statutory rule or direction that a written will is not probatable unless witnessed by two individuals or declared by the testator to be his will to both witnesses at the same time. Bioren v. Nesler, 77 N.J. Eq. 560.
Rather is it a rule of evidence to be weighed in with all the other facts and circumstances of the case. In the cases ofWeigel v. Weigel, Von Bermuth v. Von Bermuth and Byrne v.Byrne (supra), the exceptions to the rule had all been based upon mala fides in the institution or pendency of the prior suits, and, therefore, the presumption was overborne. This could not have been so if it was an unyielding rule such as Lord Coke's understanding of the effect of the doctrine of estoppel. In the unrecorded case to which reference has been made, namely,Sarson v. Sarson (Docket 31), 474, the first suit was commenced July 9th, 1907. It was never actually dismissed until after the second suit had been commenced, but it had been treated as abandoned from the time of the filing of an opinion by Vice-Chancellor Stevens on July 16th, 1908. The master to whom the second cause was referred found that there had been willful and continued desertion, but that the same had not been obstinate because of the pendency of the former suit, or until at least July 16th, 1908, upon the filing of the opinion mentioned, when insufficient time would have remained. The chancellor, principally upon the reasoning of Easter v. Easter (a New Hampshire case reported in 73 Atl. Rep. 30), sustained the exceptions to the report, and decrees nisi and final *Page 268 
were duly entered. In the Easter Case a libel was filed by a wife, and, while the suit was still pending, commenced another for desertion under a statute similar to our own for the purpose of this discussion. It was there objected by the libellee that the pendency of the first suit was a bar to the second. But the objection was overruled. Chief-Justice Parsons, in his argument, made use of the following language:
"The pendency of a libel for divorce is an evidentiary fact, bearing upon the question whether the absence complained of is such an abandonment as the statute makes a cause for divorce, but it is not necessarily decisive of the question. * * * But in this case the separation was not caused by the plaintiff's former suit, nor justified by the plaintiff's conduct, but resultedfrom the defendant's wrongful act prior to the commencement ofthat suit. The former application for divorce upon the ground of abandonment did not conclusively establish that the libellant consented to the separation, nor the pendency of the application necessarily destroy the libellee's abandoning intent." (Italics mine.)
While this decision has no binding effect upon this court, the reasoning of the chief-justice appeals to me as a sensible and logical statement of the effect of the rule in question, and was given force by the chancellor's adoption of it in the SarsonCase.
Briefly considered, the proofs before the matter, abundantly corroborated, prove that in 1916 this defendant abandoned the petitioner against her will and with the determined intention of never returning to her. In order to shake off his obligations to her and their child, and another to be born, he even hinted at suicide, accused himself of adultery, and represented himself as being a fugitive from justice. After he had deserted his family he was three times brought back into this jurisdiction ininvitum by the criminal authorities under an indictment for desertion. Upon his trial he admitted that he had received his wife's message concerning the death of one of their children, and that not even that tragedy had been sufficient to bring him back to attend the funeral. In face of these facts, and in consideration of *Page 269 Sarson v. Sarson and Easter v. Easter (supra), it would be the height of the ridiculous to assume, or for any court to say, that this man remained away from his wife because of the petition on the ground of adultery.
Thus, the desertion being willful and continued for the requisite period, it only remains to be determined whether it was obstinate, in view of the presumption arising from the pendency of the first suit. "Obstinate" means against the will of the other party. The facts are, as abundantly shown in the proofs, that repeated efforts were made by the defendant to secure the acquiescence of his wife in a separation. It is just as fully established that she very properly refused to agree to any such proceeding, but, on the other hand, went far beyond what it was her duty to do to try to bring this man to a realization of his duties and a re-establishment of their home. She had thought enough of the defendant to become the mother of two of his children, and appears to still have had enough affection for him to desire to live with him. When she was finally driven to understand that he would never repent and take up again his obligations and give to her his society to which she was entitled, she resorted to the remedy that the law has fabricated to meet just such a case and filed her petitions, under the first of which she apparently had no sufficient proofs, but under the second of which she had evidence in abundance. It seems to me that to apply in this case the rule laid down in Marsh v.Marsh, supra, would be to carry the presumption, which she has met and overcome, to a conclusion at odds with the clear intent of the legislature, as expressed in the Divorce act. InMcLaughlin v. McLaughlin, supra, there was no such state of facts presented as to be found in the case at bar, and, in addition, there is the further significant fact that the defendant in the McLaughlin Case promptly, vigorously and continually defended his wife's suit for divorce, from which it may well be inferred that he was not averse to the marriage state, and that the wife may have been all too well pleased with the separation existing between her and her husband, while in the case now to be decided, for the reasons I have shown, it is *Page 270 
manifest that the defendant deserted the petitioner entirely against his wishes, and, in short, that it was through his obstinacy.
If it were made to appear that the suit for adultery was instituted by the wife with the fraudulent design of keeping the husband away from her, and then seek to predicate a petition on the ground of desertion upon that separation, a very different case would be presented. Or, if it were not so clear that the petitioner had shown beyond peradventure her dissatisfaction with the breaking up of the home, a different determination might be reached.
The exceptions should be sustained. *Page 271