STATE EX REL. GRAVELEY, RELATOR, v. DISTRICT COURT OF THIRD JUDICIAL DISTRICT IN AND FOR POWELL COUNTY ET AL., RESPONDENTS.

No. 8682

Submitted September 21, 1946. Decided November. 16, 1946.

174 Pac. (2d) 565

Messrs. Loble & Loble, of Helena, and Mr. S. P. Wilson, of Deer Lodge, for appellant.

Mr. W. E. Keeley, of Deer Lodge, for respondent.

MR. JUSTICE ANGSTMAN delivered the opinion of the Court.

This proceeding invokes the supervisory power of this court to annul and vacate an order made by respondent court modifying a decree of divorce.

The salient facts are these: Relator and Alice Myrle Graveley were formerly husband and wife; on October 7, 1942, a decree of divorce was rendered in the district court of Powell county in an action brought by the wife and based upon charges of cruelty; the defendant in the divorce action, relator here, appeared in the action by demurrer but declined to further plead after the demurrer was overruled; the decree awarded the care and custody of Charles Russell Graveley, a child of the marriage, born July 14, 1941, to the mother; required the husband to pay $75 a month alimony and to deliver certain personal property to the wife.

The decree recited that "it is expected that there will be another baby born, the issue of such marriage" and ordered that the hospital and medical expense attendant upon the birth of the expected child be paid by the husband.

It provided that the mother "shall not, without an order by this court made after reasonable notice to defendant, remove such child from the state of Montana, nor shall she, without a like order from this court made after due notice to the defendant, place such child in the care or custody of some person other than herself."

The decree allowed the husband to take the child into his own home and into his care and custody for one week during each calendar month, and in case defendant be inducted into the military service then the privilege of the custody of the child each calendar month was extended to Rhoda Graveley, the mother of relator.

On June 15, 1946, Alice Myrle Graveley filed her petition for modification of the decree in the following respects: First, that the provision for the payment of $75 per month alimony to petitioner be changed to read as being for the maintenance of the minor children. Second, that she be awarded the custody of Dan Marvin Graveley, Jr., born on February 27, 1943, and after the decree of divorce was rendered. Third, that she be awarded temporary alimony for two years at $50 per month. Fourth, that she be permitted to remove the children to the state of California where she desires to take a two-year course in a beautician's school. Fifth, that during the hours while she is attending school for the two years, a nursery school in California supervised by a fit and proper person, or some other fit and proper person, may have the temporary custody and control of the children, and after the two-year period of schooling she intended to seek employment in California as a beautician and sought the right to then place the children in the temporary custody of some proper and responsible person while she was working.

The court, after a hearing on the petition, granted petitioner the permission to remove to California with her children and ordered relator to pay $125 per month instead of $75 as originally ordered, and ordered relator to pay to petitioner $100 as attorneys' fee and awarded to petitioner the custody of the child born after the decree of divorce was entered.

Is this a proper case for the exercise of the supervisory powers of this Court to review the action of the district court? The order complained of, it is true, is reviewable by an appeal. However, relator contends that the remedy by appeal is inadequate because of the difficulty attendant upon having the children returned to Montana in case the order should be reversed on appeal and in case the mother should decline to abide by the result of the appeal.

The mere fact that the ruling might be reviewed on appeal is no ground for withholding the remedy by supervisory control, if the remedy by appeal be inadequate. State ex rel.

Regis v. District Court, 102 Mont. 74, 55 Pac. (2d) 1295; State ex rel. State Bank of Townsend v. District Court, 94 Mont. 551, 25 Pac. (2d) 396; In re Weston, 28 Mont. 207, 72 Pac. 512. The case is one warranting review by this court of the order complained of.

It is the contention of relator that the court erred in granting petitioner permission to take the children from the state of Montana. He contends that the petition and the evidence was insufficient to warrant modification of the decree. He contends that in view of the case of State ex rel. Cash v. District Court, 58 Mont. 316, 195 Pac. 549, it is not proper in any case to permit the children to be removed from the state of Montana. That case presented a different question from the one here presented. There it was sought to remove the children from the state before an order was made regarding their custody. Their absence from the state might have deprived the court of power to make an effective order regarding their custody. That case does not hold that it is improper in any case to permit the children to be taken without the state. The rule throughout the country is to permit the removal when it is to the best interest of the children. In 27 C. J. S., Divorce, sec. 313, p. 1179, it is said: "It is against the policy of the law to permit the removal of the child from the jurisdiction unless its welfare would be better subserved thereby and ordinarily custody should not be awarded to a nonresident or to one contemplating immediate removal from the state." Would the welfare of these children be better subserved by their removal from the state of Montana to the state of California?

We shall first consider the case from the standpoint of the allegations in the petition, so far as they have to do with the necessity or advisability of taking the children out of the state of Montana.

The petition for modification alleges that petitioner has no trade or profession but has an opportunity to take a two-year course of schooling to become a beautician in the state of

California where she may reside alone or with her sister dur-. ing the two-year period and where she may have the children under her personal supervision and control except the hours when she would be attending school, during which time the children would be placed in a nursery school; that after she completes the beautician's course she will be able to make large sums of money at her profession and will be able to pay for her own care and support and for a portion of the care and maintenanec of the children.

The petition sets forth the petitioner would agree that even though she and the children are without the state of Montana, the court would have jurisdiction over the children and that she would be willing to arrange that relator might see and visit the children at his own expense, under such arrangement as the court might consider fair and just.

It is noted that the petition contains nothing to indicate that the best interests of the children require their removal to California. The petition is based solely upon the personal desires of the mother to first take a two-year course in school and thereafter to embark upon a career in which she hopes to make large sums of money. The welfare of the children is not the inducement for the contemplated change but their welfare is affected only by the fact that, as now, they would have the personal supervision and care of the mother when the mother is not in school or attending to the work involved in the business after the two years of schooling.

Defendant objected to the introduction of any evidence upon the ground that the petition failed to allege grounds for the modification of the decree. The objection being overruled, evidence was introduced by petitioner which in some particulars amplified the petition.

From the evidence it appears that petitioner had been working for the railroad company in Deer Lodge until the time of the hearing when she had been laid off because the company was reducing its force. She had received $175 per month for some months and as much as $214 per month when she was dis-

charged. Before she secured employment with the railroad company she worked in the registry office for $115 per month. She lives with her mother and pays rent and pays her for taking care of the children. Her mother is 65 years of age and, according to plaintiff's testimony, is unable to take care of the children. She said her mother is "heavy and she isn't able to chase after them." In addition to petitioner and her children living with petitioner's mother, five children of a deceased sister of petitioner for the past four months have been living with her and their father pays $20 per week for their care. Relator had been in the armed forces from the time of the decree until the latter part of August, 1945. Petitioner received regular allotments of $92 per month which included the $75 per month alimony while relator was overseas. Relator also sent her $100 with which to buy something for herself. Since his discharge he has paid the alimony regularly. Relator is a native of Powell county where his parents still reside. Petitioner allowed the children to visit relator's folks practically every month while he was in the armed forces. While he was in the armed forces petitioner and her mother went to California with the two children where they remained about one year. She worked during that time and her mother looked after the children. When relator returned from the service she permitted the children to visit him at the Graveley home for about two weeks but he has never called at her home to see the children. Petitioner testified that there is a beautician's school in Missoula, Montana, but it would cost her more to take the course there. She was asked whether her sister in California had an apartment for her when she arrives in California and she replied: "She says she has a place—two places. One is a good place and has a very nice apartment, but we will take the one with the business." She said the arrangement for the nursery school is still to be made. She said: "I still feel it would be best for both of us and even for the children. As they get older—we can't even speak to each other—they will reflect on it and they will realize." Her

reason for wanting to go to California and take the two-year course in schooling was so she would have some security in case something should happen to her former husband. The husband offered no testimony at the hearing, but he appeared by counsel who cross-examined petitioner. Petitioner testified that the reason she did not start the beautician's course while in California and during the time relator was in the armed forces, was because she had hoped for a reconciliation with her divorced husband.

As above noted courts will permit minor children to be removed from the jurisdiction of the court awarding their custody when it is to their best interests to do so. If we assume that the record shows sufficient facts to justify a change of residence of these children, there is nothing to indicate that the objectional features of the present residence, if any, may not be obviated by moving to some other point in Montana. The record does not indicate wherein the welfare of the children would be promoted by moving to California.

This case is not comparable to those wherein the mother is obligated to move to another state because of her subsequent marriage to another who has a home in another state, as in White v. White, 68 Cal. App. (2d) 650, 157 Pac. (2d) 415; Goade v Goade, 20 Wash. (2d) 19, 145 Pac. (2d) 886, and Kirby v. Kirby, 126 Wash. 530, 219 Pac. 27. Likewise, there is no showing that the health of the children is such that they must be taken to another state.

The fact that the children would, for all practical purposes, be denied the companionship and advice of their father is a circumstance to be taken into consideration in weighing the question as to what is best for them. ''The family relation and love between a child and its parents constitutes one of the holiest impulses toward good conduct and correct living. It is more than wealth, honors, or power, and we believe that courts should be loath to take any steps, or make any orders, which will prevent the play of this powerful impulse to good

action, on the part of the parents for their offspring." Futch v. Futch, Tex. Civ. App, 299 S W. 289, 292.

This is not only an important right of the father but a right which affects the welfare of his boys and should not be taken away except for reasons touching the welfare of the boys. Turner v. Turner, 86 N. H. 463, 169 A. 873.

The case of Duncan v. Duncan, 293 Ky. 762, 170 S. W. (2d) 22, 154 A. L. R. 549, permitted the mother to remove children from Kentucky to Pennsylvania. There it appeared that the mother was born and reared in Pennsylvania where her mother, brother, uncle and other near relatives resided. Her relatives had made arrangements to give her financial aid to the extent of $400 a month if she brought the children to Pennsylvania. The appellate court held that it was proper to allow the mother to remove the children to Pennsylvania under the circumstances there involved. Also, in Arnold v. Arnold, 67 Ohio App. 282, 36 N. E. (2d) 430, an order was upheld authorizing the mother who had been awarded the custody of a child to take her from Ohio to Florida because of the fact that she had secured a more remunerative position in Florida, which the court felt would affect the welfare of the child.

Here we have no assurance that petitioner will better her ▮ financial condition by removing to California. Certainly it will not be bettered for the first two years. Her sister will not be able to give her much help with her children beause she has minor children of her own to look after, her husband being now deceased. The showing here made was not sufficient to warrant removal of the children to California. Courts and judges can never be absolutely certain as to what is best for the future happiness and welfare of minor children. But when it is sought to take them without the state and doubt exists concerning the advisability of so doing, we think those doubts should be resolved against the venture, particularly in the light of the indefinite and uncertain conditions to be encountered with respect to the means of having the children properly cared for in the neighboring state and when

the same advantages looked for in the neighboring state are available in Montana.

We realize that in a proper case the question of whether ██ children should be removed from the state is one that rests in the discretion of the judge of the trial court and with his discretion this court will not ordinarily interfere. However, before a trial judge's discretion may properly be invoked, there must be some evidence tending to support the conclusion that the welfare of the children would be better promoted by removal from the state. There being no evidence to support this conclusion the order cannot stand. We do not hold that petitioner is forever barred from taking the children without the state but only that the showing here made is insufficient. Nor do we take issue with the sentiments expressed in the dissenting opinion of the enobling influence of a mother's love and care for her offspring. There is no attempt here to deprive the mother of the care or custody of her children.

The only issue here is, has a sufficient showing been made to warrant removal of the children from the state of Montana? Neither do we attempt to compare the loyalty and devotion of the father with that of the mother toward the children, nor attempt to justify the father's course of conduct in resisting the mother's, efforts at reconciliation or his conduct in other respects. The question here is not whether our sympathies are with the mother or with the father, but our sole interest is in the question of what is best for the welfare of the children as shown by the evidence.

Were we to allow ourselves to become prejudiced against Mr. Graveley for not taking the stand and testifying or for any other reason it would not follow that we should say that the best interests of the children would be promoted by allowing them to be removed from familiar surroundings and from their playmates in the wide open spaces of Montana and taken to the congested area of southern California there to be placed for the larger part of their waking moments among strangers. That is an issue separate and apart from the con-

duct of Mr. Graveley or our feeling of sympathy for Mrs. Graveley.

Furthermore, as to Mr. Graveley's failure to testify, we know that lawyers conduct proceedings in behalf of their clients. Lawyers as a rule make the decision as to whether it is necessary or advisable for their client to take the witness stand. Where, as here, applicant failed to produce evidence sufficient to move the discretion of the court, Mr. Graveley's counsel evidently took the position that there was no evidence requiring refutation on the precise issue as to how the welfare of the children would be promoted by taking them to California.

Let it be noted, to, that the suggestion in the dissenting opinion that their removal is but a temporary matter is not borne out by the record.

The record reveals that the contemplated migration to California is a permanent affair. The plan is to learn the profession and then practice it in California. The precise testimony on the point was given by Mrs. Graveley as follows:

"Q. It would be a permanent removal to California? A. Yes, I imagine."

The writ applied for will issue to annul the order so far as it grants plaintiff permission to remove the children from the state.

Was the court warranted in modifying the decree so far as it fixes the amount of alimony or maintenance money? The original decree took into consideration the fact that the second child of the marriage would be born after the decree was entered and made an order compelling the father to pay for the hospital expense attendant upon the birth of the child. The decree did not provide for the custody of the child and did not make provision for its support. The additional $50 award now made was sought on the theory that it would be needed in the event that petitioner moved to California.

However it is our view that the evidence justifies the award now made since it is shown that petitioner is now un-

employed and without property or other means of support. Likewise, the award of $100 attorneys' fees was justified.

The writ will issue to the end that the order complained of may be modified to conform to the views herein stated. Relator shall not be entitled to costs in this proceeding.

Mr. Chief Justice Lindquist and Associate Justices Morris and Cheadle concur.

Mr. Justice Adair (dissenting).

This is not an *appeal* to the Supreme Court invoking the broad general *appellate jurisdiction* of this, an appellate court.

On the contrary it is an *original proceeding* commenced in the Supreme court invoking the restricted and limited *original jurisdiction* of this court in an attempt to have here reviewed a record of the district court of Powell county and to have vacated an order thereof modifying a decree in a divorce action.

*Jurisdiction.* This court clearly would have jurisdiction of a proper and timely appeal from the order of modification, but on this *original proceeding,* the Supreme Court is without jurisdiction to review the case made in the district court and it is without jurisdiction to here decide the questions of fact and the questions of law originally and properly determined by the district court in the exercise by it of the exclusive *original jurisdiction* conferred upon district courts in actions of divorce. Constitution of Montana, Art VIII sec, 11; sec. 8829, Rev. Codes of Montana 1935.

The action in the district court was by Alice Myrle Graveley, plaintiff, against Daniel Marvin Graveley, defendant, wherein plaintiff in October, 1942, obtained a decree and thereafter in July, 1946, an order was made on her application modifying the decree so obtained. Although she prevailed in her action in the district court, Alice Myrle Graveley is not a party to this *original proceeding* so commenced in this court by relator wherein he seeks to wrest from the prevailing party the benefits and advantages conferred upon her by the order of the district court by obtaining a writ from this court directing the

district court to vacate and set aside, as null and void, the aforesaid order of modification.

The *original proceeding* now before us is entitled: "The State of Montana, on the relation of Daniel Marvin Graveley, Relator, vs. the District Court of the Third Judicial District of the State of Montana, in and for the county of Powell, and the Honorable William R. Taylor, Judge thereof, Respondents."

In an attempt to justify by-passing the remedy by appeal available to him under the statute and as grounds for invoking the *original jurisdiction* of this court rather than its *appellate jurisdiction*, relator, in his petition, alleges: "The right of Relator to appeal from the ruling and decision herein complained of * * * is doubtful and even though Relator has the right to appeal from the order aforesaid, such appeal would be and is ineffective for the reason that proceeding under said order the said Alice Myrle Graveley * * * intends and threatens, and unless restrained by this court, will remove said children from the State of Montana, immediately after the stay of such permission ordered by the District Court has expired" and that relator "is required to make payments of alimony in the sum of $125 per month beginning July 1, 1946, and unless he makes such payment will be subject to being charged with contempt of Court although Relator believes and alleges that the order * * * increasing the payments required by him to be made is wrongful, illegal and void."

The foregoing contentions are without merit. The law and the decisions are against them. They supply no justification in law for the exercise by this court of its supervisory powers herein.

*First:* There is nothing "doubtful" about the right to appeal from an order modifying the decree in a divorce action. The order of modification is clearly appealable. It is a "special order made after final judgment" from which an appeal may be taken to the Supreme Court under the express provisions of subdivision 2 of section 9731, Revised Codes of Montana of

1935.   State ex rel. Gates v. District Court, 69 Mont. 322, 221 Pac. 543.   See also Pearce v. Pearce, 30 Mont. 269, 76 Pac. 289; Brice v. Brice, 50 Mont. 388, 147 Pac. 164; Kane v. Kane, 53 Mont. 519, 165 Pac. 457; Jewett v. Jewett, 73 Mont. 591, 237 Pac. 702; Wallace v. Wallace, 92 Mont. 489, 15 Pac. (2d) 915; Morse v. Morse, Mont., 154 Pac. (2d) 982; Kelly v. Kelly, Mont., 157 Pac. (2d) 780; Gotthelf v. Fickett, 37 Ariz. 322, 294 Pac. 837; Elsman v. Elsman, 54 Nev. 20, 2 Pac. (2d) 139, 3 Pac. (2d) 1071, 10 Pac. (2d) 963; Greenleaf v. Greenleaf, 6 S. D. 348, 61 N. W. 42; Diegel v. Diegel, 73 Colo. 330, 215 Pac. 143; State v. Cook, 51 Neb. 822, 71 N. W. 733; O'Brien v. O'Brien, 19 Neb. 584, 27 N. W. 640; Jolliffe v. Jolliffe, 107 Or. 33, 213 Pac. 415; Prewitt v. Prewitt; 52 Colo. 522, 122 Pac. 766; Sheedy v. Sheedy, 122 Or. 221, 258 Pac. 184; McKissick v. McKissick, 93 Or. 644, 174 Pac. 721, 184 Pac. 272; Johnson v. Johnson, 116 Wash. 322, 199 Pac. 737; Irving v. Irving, 26 Wash. 122, 66 Pac. 123.

Exclusive *original jurisdiction* in actions of divorce is conferred upon the district courts of this state (Const. Art. VIII, sec. 11), and the district court of Powell county having rendered its decree for plaintiff for an offense of the husband, such district court was and is empowered, by express statute, to make the orders which it did make and, thereafter, it was and is authorized to "from time to time, modify its orders in these respects."   Sec. 5771, Rev. Codes of 1935.

*Second:* That the order of modification requires relator to pay an increased amount for the maintenance of the mother and her children under penalty of being charged with contempt furnishes no reason for the issuance of a writ of supervisory control or for the exercise by this court of original jurisdiction herein.   Section 5769, Revised Codes, provides that the final judgment of the district court in an action for divorce "may be enforced by the court by such order or orders as in its discretion it may from time to time deem necessary, and such order or orders may be varied, altered, or revoked at the discretion of the court."   Section 5772, Revised Codes, pro-

vides: "The court or judge may require the husband to give reasonable security for providing maintenance or making any payments required under the provisions of this chapter, and may enforce the same by the appointment of a receiver, or by any other remedy applicable to the case." "While both sections, 5769 and 5771, contain provisions relating to the support of the children and of the wife, the two sections should be considered together, and both included as within the provisions of section·5772." Wallace v. Wallace, 92 Mont. 489, 500, 15 Pac. (2d) 915, 918.

*Third:* That the order of modification permits the children to accompany their natural mother out of the state does not affect its validity nor does it render an appeal from such order either inadequate or "ineffective." State ex rel. Nipp v. District Court, 46 Mont. 425, 128 Pac. 590, Ann. Cas. 1916B, 256; Coats v. Coats, 1946, 161 Kan. 307, 167 Pac. (2d) 290, 291; Stetson v. Stetson, 80 Me. 483, 15 A. 60; Conrad v. Conrad, 1927, Mo. App., 296 S. W. 196; Duncan v. Duncan, 293 Ky. 762, 170 S. W. (2d) 22, 154 A. L. R. 549 and annotation following; Lane v. Lane, 1945, Mo. App., 186 S. W. (2d) 47; White v. White, 1945, 160 Kan. 32, 159 Pac. (2d) 461; White v. White, 1945, 68 Cal. App. (2d) 650, 157 Pac. (2d) 415; White v. Broussard, 1944, 206 La. 25, 18 So. (2d) 641; Goade v. Goade, 20 Wash. (2d) 19, 145 Pac. (2d) 886; Jones v. Jones, 155 Kan. 213, 124 Pac. (2d) 457; Arnold v. Arnold, 67 Ohio App. 282, 36 N. E. (2d) 430; Griffin v. Griffin, 18 Utah 98, 55 Pac. 84.

In State ex rel. Nipp v. District Court of Tenth Judicial District etc., supra, this court held that a trial court granting a divorce and awarding custody of a child of the marriage retains jurisdiction notwithstanding the removal of such child from the state and that the trial court may amend its decree and thereby enforce the right of visitation originally accorded.

In White v. Broussard, supra [206 La. 25, 18 So. (2d) 642], a decree of a Louisiana court was modified and the divorced mother, presently residing in California, was awarded the cus-

tody of her son aged nine years. There the Supreme Court of Louisiana said: ''A careful study and analysis of all of the cases on this subject, however, reveals that this court has consistently awarded the custody of a minor child to the mother unless she is found to be morally unfit or unless, as has been the occasion in very exceptional cases, the mother is incapable of taking care of the child.''

In Stetson v. Stetson, supra [92, 80 Maine 453, 500, 15 A. 61], the decree, originaly awarding custody of a minor child to the father residing in Massachusetts, was modified to award the general custody of the child to the mother residing in Maine. In affirming the order of modification the Supreme Court of Maine said:

''That the result of the decree may cause the removal of the child beyond the limits of the state, is not, of itself, an objection. This may be the effect in any case. Though the parent receiving the custody may at the time be a resident within the state, there is no authority, except in cases of crime, to prevent an immediate removal from the state. The order, even in this case, is not that the child shall be removed, though probably such may be the effect of it.

''But even though it may be so, the child is not removed from the jurisdiction of the court. That has already attached. The decree is a conditional one, subject to modification and change. The mother takes the child subject to that condition. On any proper process for a change she is bound wherever she may be to take notice, and though she may not personally be within the jurisdiction of the court, the subject-matter is, so that the judgment of the court will be valid and binding upon her, and by the provisions of the constitution of the United States may be enforced against her, though in another state.

''In such a case as this the great governing principle for the guidance of the court is the good of the child. It may often be for the best interests of the child that it should be removed from the state for the purposes of education, business, or support. If there is any occasion for imposing restraint in this,

it is competent for the justice presiding to impose it. The authority given by the statute is to be exercised with such discretion as may be required under the circumstances of each case, and, when conceded, exceptions do not lie to the manner of its exercise.''

In Conrad v. Conrad, supra, [296 S. W. 198], the decree of a Missouri court was modified to permit a divorced mother to temporarily remove her nine year old son from Missouri to the state of Illinois, the appellate court holding that, ''the removal of a child from the state is not a taking of it beyond the jurisdiction of the court in the sense that the court thereby loses jurisdiction to change or modify its decree in the future, should subsequent events require it, inasmuch as both parents, having necessarily been parties to the action for divorce, are personally bound by the court's decrees and orders. Consequently, the court may properly permit a parent to whom the custody of a child has been awarded to take it to another state, or even to a foreign country, provided it be made to appear that the welfare of the child will be thereby subserved.''

In the most recent case of Coats v. Coats, 1946, supra [161 Kan. 307, 67 Pac. (2d) 291], the court permitted a divorced mother to remove her sons, aged nine and twelve years respectively, from Kansas to California. The mother's motion to modify was upon the grounds ''that she desires to move to California which she thinks will be for the best interest for the training and development of the children.'' Therein the Supreme Court of Kansas said: ''Appellant complains that the children are being sent out of the state. * * * There is no barrier to doing this when the circumstances warrant it. We did so in Jones v. Jones, 155 Kan. 213, 124 Pac. (2d) 457, where a mother was given custody of a child, with authority to take the child to California. Later unofficial reports indicate the wisdom of the order. In the case of In re Bullen, Petitioner, etc., 28 Kan. 781 (opinion by Brewer), the child was permitted to be taken to England. Appellant argues that the plaintiff might refuse to permit the children to come back

to Kansas in the summertime and contends he would be without remedy. The point is not well taken. The trial court reserved the right to make further orders if the circumstances should warrant. Clearly the court would have authority, if the facts should justify it, to make an order changing the custody of the children, or to authorize defendant to stop monthly payments for their support, or to do both. If that were done there is no reason to think the California court would not give such orders proper recognition, just as we gave similar orders of a California court proper recognition here in the recent case of White v. White, 160 Kan. 32, 159 Pac. (2d) 461, where many authorities on the matter are set out or cited. See 39 Am. Jur. 612; 46 C. J. 1247, where the general rules are stated, and 20 A. L. R. 838 et seq., where the cases are annotated."

In White v. White, 160 Kan. 32, 159 Pac. (2d) 461, the Kansas court recogized and enforced an order of a California court awarding to a divorced mother her two minor daughters who had been brought to Kansas by their father in violation of the California court's order.

In White v. White, 68 Cal. App. (2d) 650, 157 Pac. (2d) 415, a California court modified its order to permit a divorced mother to remove her minor daughter from California to Pennsylvania.

In Goade v. Goade, supra, a Washington court modified its decree to permit a divorced mother to remove her minor daughter from Washington to Illinois in which last named state was stationed a chief petty officer in the Navy whom the mother intended to marry if allowed to take her child with her. The mother's petition prayed that the decree "be modified and there be awarded to [her] the sole care, custody and control and guardianship of said minor to the end that she may be free to take up her residence where she may see fit and remove said child from the State of Washington."

In Jones v. Jones, supra, the Supreme Court of Kansas

authorized a divorced mother to remove her minor daughter from Kansas to California.

In Lane v. Lane, supra, the decree of a Missouri court was modified to permit a divorced mother to take her son aged six years, from Missouri to Mexico City, Mexico, where the child would be enrolled in an American school in Mexico, the mother testifying that she would employ a nurse for the child but that she intends to look after him herself most of the time.

In Duncan v. Duncan, supra [293 Ky. 762, 170 S. W. (2d) 24], a Kentucky court modified a decree to permit a divorced mother to take with her from Kentucky to Pennsylvania, her three minor children aged three, five and eight years respectively, saying: ''Where the children are very young and the mother is a suitable person, custody of the children will generally be awarded to her as being best calculated to secure their happiness and well-being.''

In Arnold v. Arnold, supra [67 Ohio App. 282, 36 N. E. (2d) 432], the appellate court approved the modification of a decree to permit a divorced mother to remove her daughter, aged seven years, from Ohio to Florida, saying: "Each of the judges of this court has had large experience in the trial of divorce cases while sitting on the Common Pleas Bench and each has, without question, modified a prior order of the court in reference to the custody of children whenever the facts seem to justify the same, * * *.''

In Griffin v. Griffin, supra, the appellate court permitted a mother divorced in Utah to remove to the state of Iowa her eight year old son, voiding an order of the trial court prohibiting such removal.

In Trevino v. Trevino, 1946, Tex. Civ. App., 193 S. W. (2d) 254, 255, the appellate court affirmed an order of the trial court awarding to the divorced mother the custody of her five year old son holding that, ''the mother is a suitable person and able to be with the child at least at night and give it the

attention that it requires and the love that only mothers know how to bestow.''

The majority opinion herein laments, ''The fact that the children would, for all practical purposes, be denied the companionship and advice of their father'' and says that, ''This is not only an important *right* of the father but a *right* which affects the welfare of his boys.'' At common law the father was generally entitled to the custody and control of his minor children but this old common-law rule has been long since discarded as a relic of antiquity and by express statutory provision in Montana it is provided that, ''As between parents adversely claiming the custody * * * neither parent is entitled to it as of right; but other things being equal, if the child be of tender years, it should be given to the mother; * * *.'' Subdiv. 2 of sec. 5878, Rev. Codes of Montana 1935.

This is not exactly a horse and buggy age and the courts in modern times recognize that the mother is the natural custodian of her young and that in legal contests for the custody of children of tender years the law favors the mother (sec. 5878, Rev. Codes; Settle v. Settle, 117 W. Va. 476, 185 S. E. 859) ''in order that the children may not only receive her attention, care, supervision and kindly advice, but also may have the advantage and benefit of a mother's love and devotion for which there is no substitute. For, as has been very well stated by one court, 'there is but a twilight zone between a mother's love and the atmosphere of heaven, and all things being equal no child should be deprived of the maternal influences unless it be shown there are special or extraordinary reasons for so doing. * * * It is generally conceded that these children will be reared, trained and cared for best by their mother.'' 2 Nelson, Divorce and Annulment, 2d Ed., sec. 15.09, pp. 175, 176.

''It is not open to question, and indeed it is universally recognized, that the mother is the natural custodian of her young. This view proceeds on the well known fact that there is no satisfactory substitute for a mother's love. So true is

this that in this state the code exacts that she shall have custody of her child, everything else being equal, unless the child has reached the age which necessitates a particular education or preparation for its life work." Washburn v. Washburn, 1942, 49 Cal. App. (2d) 581, 122 Pac. (2d) 96, 100.

It is my view that, under the Constitution and allegations of relator's petition herein, the Supreme Court is without jurisdiction. In Bordeaux v. Bordeaux, 26 Mont. 533, 535, 69 Pac. 103, 104, in denying a petition seeking to invoke its *original jurisdiction* in an action for divorce, this court said:

"Suffice it to say that this application seeks to invoke the exercise of original jurisdiction, and that the constitution has not, either expressly or by implication, conferred upon the supreme court original jurisdiction in actions for divorce. The source of our jurisdiction is found in sections 2 and 3 of article 8 of that instrument, and in neither is there authority for the relief sought by the applicant. To the complete exercise of appellate jurisdiction this court is empowered to issue and to hear and determine such 'original and remedial writs as may be necessary or proper.' Complete exercise of appellate jurisdiction in the case at bar does not demand such a writ, nor in any wise depend upon its issuance; nor does the appellant ask for it. We remark, also, that section 1730 of the Code of Civil Procedure, providing that whenever an appeal is perfected 'it stays all further proceedings in the court below upon the judgment or order appealed from, or upon the matters embraced therein, * * * but the court below may proceed upon any other matter embraced in the action and not affected by the order appealed from,' does not grant to this court the power which the appellant asks to be exercised.

"Nor is the order prayed for one falling within the general and inherent powers of this court. * * * In Montana an action of divorce is a suit in equity. * * * The action—the entire case—is not transferred by appeal. Questions of law only are presented on appeal, even where the relief sought is equitable in character. The action itself is still pending in the lower

court. On an appeal only questions of law are tried. Neither the weight of the evidence nor the credibility of the witnesses is re-examined, nor is evidence adduced. Except in so far as affected by the appeal, the cause remains in the district court, the primary forum. The supreme court may affirm, reverse, or modify the judgment or order appealed from, and direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had (section 21, Code Civ. Proc. ), but the judgment of the supreme court affects only the judgment or order of the lower court, and must be certified to the court from which the appeal was taken and in which the action is pending. This is manifest from an examination of the organic law and the statutes. Express recognition of it is found in section 1730, supra. This distinction has been often overlooked, as appears from many of the opinions read in support of the present proceeding.

"The application is dismissed for want of jurisdiction to entertain it."

The Constitution expressly states that the supreme court "shall have appellate jurisdiction *only,* * * * and shall have a general supervisory control over all inferior courts, *under such regulations and limitations as may be prescribed by law.*" Sec. 2 of Article VIII. (Emphasis mine.) The Constitution also empowers this court to issue certain specifically enumerated writs "and such other original and remedial writs as may be necessary or proper to the complete exercise of its appellate jurisdiction." Sec. 3 of Art. VIII. These provisions of the Constitution do not empower the Supreme Court to entertain this original proceeding as the substitute for an orderly appeal nor on such original proceeding to review the record and determine the cause in like manner and to like extent as would be proper on an appeal where, to vest jurisdiction in this court it would be necessary to serve and bring before the court as appellee or respondent, the prevailing party in the district court. Endresse v. Van Vleet, Mont., 169 Pac. (2d) 719.

Supervisory control over the district court may be exercised by the Supreme Court only "under such regulations and limitations as may be prescribed by *law*" Const. Art. VIII, sec. 2, emphasis mine. *Law* is the expression of the will of the supreme power of the state as set forth in the Constitution and statutes of the state. Sections 5670 and 5671, Rev. Codes of 1935. The *law* has conferred upon the district courts *exclusive original jurisdiction* in actions for divorce. Const. of Montana, Art. VIII, sec. 11; sec. 8829, Rev. Codes 1935. Nowhere has the *law*, either directly or by implication, conferred upon the Supreme Court of this state *original jurisdiction* in divorce actions. As to such actions this court has "appellate jurisdiction only" (Const. of Montana, Art. VIII, sec. 2) empowering it to review the questions of law properly presented on specifications of error. The review here undertaken is in the absence of the party prevailing in the court below and it is not predicated upon any specifications of error.

In reviewing the proceedings had in the trial court the majority opinion sets forth a statement of what it terms "the salient facts." This statement overlooks and omits certain facts which I deem most material to a proper understanding and solution of this case. For this reason I am impelled to here set forth what I consider to be the essential facts which obtain here.

*The Facts:* On October 7, 1942, in an uncontested divorce action brought by Alice Myrle Graveley against her husband, the relator, Daniel Marvin Graveley, the district court of Powell county, Montana, rendered and entered its decree for the wife. No appeal was taken and, so far as concerns the dissolution of the marriage, the decree became and is final.

On June 15, 1946, the plaintiff Alice Myrle Graveley, in the same action, petitioned the district court of Powell county to modify its decree in various respects seeking, among other things, permission for her two children, aged three and five years respectively, to accompany and reside with her outside

the state of Montana while she is preparing herself to become a licensed beautician.

On July 1, 1946, a hearing was had on the petition. The relator Daniel Marvin Graveley was personally present and, through his counsel, interposed objections to the introduction of evidence contending that the petition fails to state facts sufficient to constitute reasons for modifying the decree in that "it does not show any *change of conditions or circumstances* that would warrant or authorize the court in changing the decree." Upon the overruling of relator's objections the mother testified and thereafter relator renewed his objections contending "that there is not sufficient *showing,* nor is there sufficient *pleading,* to invoke the authority of the court to grant any of the things asked to be granted by either the plaintiff or her counsel." These objections were overruled, whereupon the district court made an order modifying the decree so as to permit the infant children to accompany their mother outside the state.

In considering relator's objections and determining whether or not there has been any "change of conditions or circumstances" between the time of the rendition and entry of the decree and the time of the making of the order of modification, it is necessary first, to consider the "conditions and circumstances" as they existed at and prior to the entry of the decree on October 7, 1942, and second, to consider the changes that have occurred in such "conditions and circumstances" subsequent to the entry of such original decree.

The relator declined to testify and no evidence whatever was introduced in his behalf, either at the trial of the divorce suit in October, 1942, nor, at the hearing on the petition to modify the decree had on July 1, 1946. On the other hand the mother testified in support of her petition and she was subjected to thorough cross-examination by relator's counsel following which relator's counsel announced to the trial court: "The defendant will submit the matter upon the record as it now stands, and the defendant offers no testimony. We re-

new the motion to dismiss this proceeding, heretofore made, and that may be submitted." Leave was then sought by the mother's counsel to interrogate relator but this was not permitted by the trial court which, in sustaining relator's objection to such procedure, announced, "I'm going to sustain the objection and not permit you to examine the defendant."

"Ordinarily the reopening of a case for further testimony is a matter within the discretion of the court. When custody of children is involved in a divorce proceeding, it seems to us to be the duty of the trial court to hear all competent evidence which may be offered. The care and custody of children of tender years are of paramount consideration." Johnson v. Johnson, 1946, Ariz., 172 Pac. (2d) 848, 849.

The only evidence in this case is such as was placed there, by the mother, hence there is no question of any conflicting evidence to trouble the court.

The decree contains findings by the trial court that the allegations of the mother's complaint "are sustained by testimony free and clear from any and all objections as to their relevancy, competency and materiality and that the same are true." Hence for the facts as to the "conditions and circumstances" existing at and prior to the entry of the decree and as to the changes that have since occurred this court must rely upon and accept as true the sworn statements set forth in the mother's original complaint filed in the fall of 1942 and her undisputed testimony given at the hearing of July 1, 1946.

*Conditions and Circumstances At and Prior to Decree.* The "conditions and circumstances" existing at and prior to the entry of the decree appear as follows:

Alice Myrle Graveley, aged 18, and Daniel Marvin Graveley, the relator herein, were married at Helena, Montana, on September 3, 1940. They established their home on a ranch in the vicinity of Avon, Powell county, Montana. In about ten months a son, Charles Russell, was born. During his birth, the young mother suffered internal injuries requiring surgery to repair. Failing to receive such surgical attention her health

became impaired. This physical condition of the wife resulted in marital differences. When but six days over twelve months old, the infant was taken from his mother by the relator and placed in the care and home of the infant's paternal grandparents. About seven or eight weeks later the relator left his wife and returned to the home of his parents where he took up his separate abode. During this time relator refused to permit his wife to have the custody of her baby. He also refused to permit her to visit the child other than at the home of relator's parents and then only in the presence of relator or third parties.

At such time the infant required the natural care, love and affection of the mother, which care and affection she at all times stood ready and willing to bestow.

Confronted with such conditions and circumstances, and with both her baby and husband gone, the mother retained an attorney at law to institute appropriate legal action to restore the baby to her custody. At the time she hoped for a reconciliation but was advised that to regain custody of her child it would be necessary to commence suit for divorce. This she did, grounding the action on extreme cruelty. The mother was then pregnant, in ill health, without property or financial means and unable to work or provide for herself, which facts she stated in her complaint.

The relief for which the mother prayed was: For a district court order requiring relator to show cause why he should not be required to forthwith deliver to her the possession of the infant, Charles Russell, to be retained by her during the pendency of the action; for a decree of divorce; for permanent custody of the child; for a monthly allowance for the support of herself and child; for the cost of surgical treatment required by plaintiff in connection with the internal injuries suffered by her during the birth of her baby; for the costs and expenses of her approaching accouchement and for costs of suit and attorney's fees.

A trial was had and decree rendered for the wife dissolving

the marriage; awarding her attorneys' fees and court costs; ordering the payment to her of alimony in the sum of $75 to be paid in monthly installments, and also providing that, "Whereas, it is expected that there will be another baby born, the issue of such marriage, and it is by the Court further Ordered, Adjudged and Decreed that the expense of the hospital and medical attention that may be attended upon the birth of said expected child, and including medicines and including possible complications or surgical operations that may be the result of plaintiff's physical condition, or arising out of the birth of Charles Russell Graveley, shall be bourne and paid by the defendant."

The decree further provides that it is not intended to be final in so far as it applies to the care and custody of the minor children and that the "court retains jurisidction of the parties hereto and of the children, the issue of the marriage between the parties hereto, for the purpose of amending, and correcting, modifying and/or revoking any provision of this decree and judgment in so far as the same applies to the care and/or custody of any children, the issue of the marriage between the parties hereto at any future time during the minority of such children, as to the court may seem appropriate or desirable.

"It is further ordered, adjudged and decreed that except as the court may hereafter rule plaintiff may have the care and custody of Charles Russell Graveley, infant son of the parties to this action, now of the age of sixteen months or thereabouts, provided, however, that she shall not, without an order by this court made after reasonable notice to defendant, remove such child from the State of Montana, nor shall she, without a like order from this court made after due notice to the defendant, place such child in the care or custody of some person other than herself; provided, also, that defendant, at his election, may take such child for one week during each calendar month into his own care and custody and to be retained by him during such period at his own home always, however, within the State of Montana. In case defendant

shall be inducted into the military service of the United States then the privilege of the custody of said child during each calendar month is extended to Rhoda May Graveley, defendant's mother. In either event defendant or his mother is personally to receive such child from plaintiff and shall personally return him to plaintiff."

*Changed Conditions and Circumstances.* Subsequent to the entry of the decree the relator was inducted into the military service of the United States which took him overseas and from which he was not discharged until in August, 1945.

The expected child mentioned in the wife's complaint and in the court's decree was born February 27, 1943, and named Daniel Marvin Graveley, Jr.

During the time that relator was in military service the mother received a monthly allotment from the United States government of $92 per month for the support of herself and family and such allotment was considered, by her, in lieu of the monthly installments originally provided for in the decree.

While relator was overseas, the mother, after first obtaining the permission of the district court so to do, took her children to Long Beach, California, where they all remained for about a year, residing with the mother's widowed sister who there owns and operates a beauty shop.

The mother's plans to complete a course in beauty culture were interrupted by her marriage to relator. However, while residing with her sister in California, the latter offered to allow her to become an apprentice in her beauty shop and to enter upon a course of training requiring two years for completion at the end of which time the sister's shop would be turned over to the mother to operate.

Concerning such offer the mother testified: "While he [relator] was overseas and I was in California, my sister wanted me to take it up at that time, and I wrote to Dan, and he sort of discouraged it, because he thought when he came back, I wanted to marry him, so I didn't do it, because I —well, I thought there would be something to that."

The mother testified that she thought there would be a reconciliation and remarriage; that she had advised relator that she would remarry him if he were willing and that she did not want a divorce in the first place.

Because relator desired it the mother voluntarily returned to Montana with her children prior to relator's release from military service, and when relator came home he found his two children awaiting him at the ranch home of his parents at Avon, Montana.

Except for the time they were in California, the two children were permitted to visit at the ranch home of relator's parents "every month practically all the time he [relator] was in the service."

Upon her voluntary return from California the mother obtained employment in the Milwaukee railroad shops at Deer Lodge, Montana, where she worked continuously from August 16, 1945, to June 30, 1946, at which time she was laid off on account of reduction in force on the railroad.

During the time she was employed by the railroad, the mother and her two infants resided at the home of the latters' maternal grandmother, aged 65 years, in Deer Lodge where also resided the five children of a deceased sister.

The mother testified that she was required "to furnish the home and everything for them." While the maternal grandmother stayed with her and assisted in caring for the children on account of the war, the grandmother is no longer able to care for them. The mother testified: "My kids aren't getting the care they should have and I want them to have. * * * My mother is heavy, and she isn't able to chase them. They are uncontrollable, * * * and I don't like to see my children that way." On cross-examination the mother was asked if there was not a possibility of the railroad business increasing and of her resuming her work thereon, to which she replied in the affirmative, adding: "I'd have to make provision for my children, as my mother isn't taking care of them any more."

Unsuccessful in her efforts to effect a reconciliation with her former husband, the mother decided to accept the offer made by her sister and become apprenticed in the latter's shop in Long Beach. Accordingly, on June 15, 1946, she filed a petition for modification of the decree, seeking the district court's permission to take her children with her.

At the hearing the mother testified that she had no especial skill or occupation of any kind; that she desires to be put in a position to further her education so that, after two years she would become self-supporting and have some security in case anything should happen to relator; that her sister would be her teacher while she was serving her apprenticeship and learning the business, with the end in view of eventually taking over and running the shop. She testified: "I want to get ahead, so I can give my children something, as Dan said, when the children got older, they would come to him. I want to be able to give my children something if they do go to their daddy. I want the chance to be able to give them things." Concerning her sister she testified: "She will apprentice me, see that I have a place I can go to and she will arrange for things so that I will be with her, and that after awhile I will be able to contribute to the support of my children too."

When asked by relator's counsel if the children would not be better in Montana, the plaintiff replied: "I don't think so. My mother still lives here, yes, but she isn't able to take care of my children."

On cross-examination the mother testified:

"Q. And when did he [relator] return from military service? A. He returned the last of August, last year. * * *

"Q. You say he doesn't come to see the children? A. No.

"Q. Well, now, hasn't he been with the children since he came out of the armed forces? A. I let them go out there. They were there when he came home for about two weeks.

"Q. When you say 'there' what do you mean? A. Out to his mother's.

"Q. At the ranch, or at Avon? A. At Avon—at the ranch; * * *.

"Q. Since then, hasn't Dan called at your home in Deer Lodge with the view of visiting the children? A. No.

"Q. Not at all? A. No. He came to see my sister one night. I asked him to come in, and he wouldn't, and I took the children out to the car.

"Q. Is this a different sister from the one in California? A. It was the one in California. She tried to talk to Dan to see if he would help me in apprenticing. He never gave any thought to it."

The mother testified that relator will not speak to her and that: "I still feel it would be best for both of us and even for the children. As they grow older—we can't even speak to each other—they will reflect on it and they will realize—"

At the hearing of July 1, 1946, on cross-examination, the mother testified:

"By Mr. Wilson: Q. You have mentioned here about reconciliation between yourself and your husband, you have mentioned that several times? A. Yes.

"Q. Have you encouraged that reconciliation yourself? A. Yes.

"Q. You have written your husband to that effect that you would remarry him if he were so willing? A. Yes.

"Q. You have told him that personally? A. Yes.

"Q. But you were the plaintiff in the divorce action? A. *But I really didn't want it. I wanted separate maintenance. His mother had my baby and the lawyer told me if I wanted my baby, it would be best to get a divorce.*

"Q. In any event, you did get a divorce? A. Yes, I did.

"Q. It would be your preference right now that there be a reconciliation and remarriage? A. Yes, and always was.

"Q. There always was that preference in your mind? A. Yes, there was.

"Q. You think you could get along better than you did

formerly? A. If he has the will, as I have it, I know we would.''

The father sat in the court room while the foregoing searching cross-examination was in progress. He heard the frank admissions of the mother which bespeak the sacrifices that she is willing to make that her little ones may have a father's companionship, affection and advice. He heard—he witnessed how the mother's every plan for the future of herself and babies was placed in his hands. He was then and there confronted with the necessity of making for himself the very decision which he now asks this court to make for him. A word or even a nod from him could have effected a resumption of the family relation and enabled the infants to enjoy equally the love of both parents. The ''courts should be loath to take any steps, or make any orders, which will prevent the play of this powerful impulse to good action, on the part of the parents for their offspring,'' yet here the home had long since been broken up; the children had been allowed to become the wards of the district court and their custody had been awarded. To change all this required and requires the assent and cooperation not only of one but of both parents.

The record is that the mother was agreeable and willing to go all the way to make amends and restore and resume family relations. The record is that the father was and still is unwilling to go even half way in that direction. It is apparent that he wants his children but that he wants nothing to do with their mother. Hearing, seeing and knowing that it lay within his power to have all his little family with him if he so desired, he stood mute; he declined to take the witness stand; he failed to pronounce for himself the decision which must be made herein. He left the decision for the district court to render. That court considered the welfare of its wards and its responsibility to them. It then performed its unpleasant task in accordance with the dictates of the written law found in the books and the unwritten law reposing in the hearts of men by deciding that the best interests of the

infants would be served by granting the mother's petition. A blind man, James E. McCormick, of Modesto, California, once wrote: "You have heard mother referred to as the one 'who went down into the valley of the Great Shadow that we might have our being.' * * * 'And how many shadows has this ever faithful guardian angel passed through that you and I might live and be equipped with the forces to live'. Where is there another who will make the sacrifices, suffer the pain and continue to face the storms of life that the child may be protected? Who can measure the value of that priceless jewel, a mother's love? If the great Almighty ever searched for a treasure house in which to store the jewels of love, kindness, self-sacrifice, devotion, peace and patience, His all-seeing eye must have rested on a mother's heart."

Of course this mother is not going to California or any other place without her babies.

Everyone knows that the place for infants is with their mother. These little tots require the companionship, care and affection of their mother. It is she who will plant in their hearts the inspiration that in after years may bring them success or even fame. The mother's ambition to fit herself for an honorable profession which will add to her ability to provide for the needs of herself and children is a laudable one. In this worthy enterprise this mother should be encouraged and not discouraged.

The district court had original jurisdiction to make and render the original decree in the divorce action (Const. of Montana, Art. VIII, sec. 11; sec. 8829; Rev. Codes of 1935), and thereafter by express statutes it was and is empowered to give such direction for the custody and care of the children of the marriage "as may seem necessary or proper, and may at any time vacate or modify the same" (Sections 5770, 5771 and 5772, Rev. Codes of 1935).

In reviewing an order affecting the custody of a child, an appellate court will make every reasonable presumption in

favor of the acts of the trial court. 27 C. J. S., Divorce, sec. 324 (4, 5), pp. 1262, 1263.

"Under our law the *district court* is vested with *legal discretion* in both the award of alimony and the custody of the minor children of the marriage, which will not be interfered with on appeal, unless there has been a manifest abuse thereof. Citing numerous authorities.

"The court granting the divorce is unquestionably the proper tribunal to determine those questions, and our lawmakers have exhibited wisdom in leaving these subjects to the *discretionary action* of the *District Court*." Boles v. Boles, 60 Mont. 411, 199 Pac. 912, 913. (Emphasis mine.)

In Damm v. Damm, 82 Mont. 239, 266 Pac. 410, 412, this court, speaking of the disposition to be made of the child in divorce actions, said that "of necessity the matter must be left largely to the *sound discretion* of the *trial court,* having the parties before it and being thus enabled, not only to weigh the evidence adduced for or against either of the parents, but to judge from their appearance and manner of testifying which of them is best fitted to care for and educate the child; the influence and probable surroundings of which will be most apt to give the child the better opportunities in life and best serve its best interests; *and it is only on a showing of manifest abuse of such discretion that the award made by the trial court will be disturbed."* (Emphasis mine.) Also see, In re Thompson, 77 Mont. 466, 475, 251 Pac. 163; Rogers v. Rogers, Wash., 170 Pac. (2d) 859.

It is clear that the mother's application for permission to temporarily remove her infant children to another state was addressed to the sound legal discretion of the district court and, under the law, this court is without right or authority to vacate the district court's order granting the application except on a clear showing of an abuse or breach of that discretion. No such showing was made in this case. As was well said by this court in Jewett v. Jewett, 73 Mont. 591, 595, 237 Pac. 702, 704: "The judge hearing oral testimony, in

such a controversy has a very superior advantage in determining the same, and his decision ought not to be disturbed except upon a clear showing of an abuse of discretion.''

On October 7, 1942, the infant Charles Russell, at the age of sixteen months, became a ward of the district court immediately upon the entry of the original decree awarding his custody.

The infant Daniel Marvin, Jr., was not born until four months and twenty days after the decree was made and entered. Obviously the court was wholly without power to order or place such unborn baby in the custody of the father or of anyone other than the mother, and such unborn baby did not become a ward of the district court upon the entering of the original decree.

Upon dissolution of the marriage the mother became free to go and come as she saw fit. She was privileged to go any place that she desired, either within or without the state of Montana, both before and after the birth of the infant Daniel Marvin, Jr., without first obtaining the approval of any court so to do and it was not until the district court, on petition of the mother, made an order relative to him that the younger infant became a ward of the district court. However, by such voluntary action of his mother has Daniel Marvin, Jr., now also become a ward of the district court.

The divorced mother is a free agent. She is free to remove to California or elsewhere at any time she chooses. She is free to become apprenticed in her sister's beauty shop and to there pursue the desired course of study and training. She has the same right accorded every American citizen to go and live where and to do what she pleases and neither the district court nor the Supreme Court is empowered to order where she must take her schooling or where she must reside. Being powerless to directly restrain the mother from leaving this state, the court should not deny her permission to have her babies accompany her and thus, by preying upon the mother's love for and instinct to protect her young, indirectly enjoin her

departure for it is quite apparent that the mother will not go without the infants and that where they are she will be found close by that she may minister to their needs.

The district court in making its order exercised the legal discretion and power expressly conferred upon it by section 11 of Article VIII of the Constitution and by sections 5770, 5771, 5772 and 8829, Revised Codes of Montana, 1935.

The Supreme Court in "supervising" the district court and directing it to vacate its order is interfering with the legal discretion lodged exclusively in the district court and assuming to exercise powers not conferred upon the appellate court with respect to the custody, care and welfare of wards of the district court upon whom the justices of this court have never set eyes and about whom they know practically nothing.

The Supreme Court sits as an appellate tribunal and not as a nisi prius court and it does not possess the same original jurisdiction that has been conferred upon the district courts. While the law has placed the infants here involved in the lap of the judge of the third judicial district as wards of his court, it has not committed them to the remote control of the Supreme Court nor has it made them wards of this court.

Here, as in State ex rel. Westlake v. District Court, Mont., 173 Pac. (2d) 896, decided November 1, 1946, and State ex rel. Westlake v. District Court, Mont., 167 Pac. (2d) 588, 163 A. L. R. 911, decided March 23, 1946, the Supreme Court attempts to exercise original jurisdiction and powers which it does not have. The writ should be denied.

Rehearing denied December 4, 1946.