COOPER, Appellant, v. COOPER, Respondent.

(No. 6,918.)

(Submitted March 16, 1932. Decided April 8, 1932.)

[10 Pac. (2d) 939.]

58

*Messrs. Ayers & Ayers* and *Messrs. Belden & DeKalb,* for Appellant, submitted a brief; *Mr. H. Leonard DeKalb* argued the cause orally.

60

Mr. *Oscar O. Mueller* and Mr. *Ralph J. Anderson,* for Respondent, submitted a brief; Mr. *Mueller* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff brought this action for a divorce on the ground of cruelty, and asked for permanent alimony in the sum of $50,000 and attorneys' fees. Defendant by answer denied the allegation of cruelty, and, by way of cross-complaint, asked for a divorce on the ground of wilful desertion. The reply put in issue the allegations of the cross-complaint. The court found for defendant and against plaintiff, and the decree of divorce followed. Plaintiff has appealed from the judgment.

Plaintiff presents no argument that the court was in error in denying a decree of divorce to her. Her contention is that the court erred in granting a divorce to defendant.

The evidence shows that the parties were married at Portland, Oregon, on November 16, 1918, and took up their residence near Lewistown, on the Cooper Bros.' ranch. The home was furnished with furniture which plaintiff selected. Defendant continued to reside on the ranch until 1923, prepar-

ing his own meals and looking after the household. Plaintiff was at the home for short periods of time, but spent the greater portion of the time throughout the years of their married life in Tacoma, Washington; Portland, Oregon; Chicago, Illinois, and elsewhere. In the summer of 1923 plaintiff made a short visit to the ranch, and then informed defendant that she was going to move the furniture, which she did. He said he complained about her moving the furniture and told her "she was breaking up her home here at the ranch." Defendant attempted several times, he said, to talk to her about the matter of living in Montana, but that it "just started an argument."

In 1923 Mr. and Mrs. Carl Wight moved into the house formerly prepared as the home for plaintiff and defendant. They did so at the request of plaintiff. Mrs. Wight testified that plaintiff then told her "that she was not going to live there." Defendant testified that plaintiff has not lived on the ranch since 1923; that he requested her to do so; that he offered to remodel a house on the lower end of the ranch on a good road near Lewistown, or to fix up an apartment in town, if she would live with him. This she at first agreed to do, and then the next day refused to do so. He said that in 1924 plaintiff returned to Lewistown for about a week "to see how much more money she could get out of me." She returned again in 1927 with a lady friend, and upon her demand defendant accompanied them through Yellowstone Park. When defendant returned to Lewistown, plaintiff, through her counsel, presented defendant with a separation agreement whereby she was to receive from him $50,000. This he refused to sign. She then threatened him with a separate maintenance suit. Shortly thereafter she left for Chicago.

In 1929 plaintiff again returned to Lewistown, and sought and obtained the assistance of defendant in settling a lawsuit brought against plaintiff by her attorney. Defendant paid part of the money agreed to be accepted in settlement of the case. A few days later she commenced this action. She advised defendant of the commencement of the action, and prom-

ised him that she "was going to have it stricken off the docket." The next day she left, and did not return until the time of the trial.

Defendant said that he never at any time directed plaintiff where to go to live, but did make offers to have her live with him in Fergus county, which she refused. Plaintiff testified that prior to her marriage with defendant there were plans made by which they were to live on the coast a greater part of the year. She also introduced in evidence numerous letters written to her by defendant in which he transmitted money to her and from which it would seem that she was living apart from him with his consent, at least part of the time. In the letters defendant also manifested an affection for plaintiff. She also testified that she lived elsewhere than in Montana because it was hard for her to endure the Montana climate; that while she was on the coast she had her gall bladder and tonsils removed. The physician who treated her said that the altitude would have only a minor effect on her physical condition as he found it. There was no issue born of the union.

The evidence shows without dispute that defendant paid plaintiff money monthly for her support before the divorce action was started, and made some payments after the action was commenced, all while she was living separate and apart from him. Plaintiff contends that because thereof it must follow that he did not consider her a deserter. It is true, as contended by plaintiff, that, if she had deserted defendant, he was not bound to longer support her. But it does not follow that, if a husband voluntarily continues to provide for his wife's support after she has left him, he thereby is precluded from contending that she is a deserter.

In *Ward* v. *Ward*, 81 Mont. 587, 264 Pac. 667, 672, this court said: "All that she sought was the means to make the trip to California and support for herself and the child in that state—a continuation of the support which the plaintiff had voluntarily afforded her during her desertion of him. While the plaintiff did pay to defendant approximately the same amount monthly from the time of her desertion up to April, 1926, he was merely

paying all that he could from his salary in an effort to aid the woman who bore his name and was still his wife to regain her health, although, as she had deserted him, he could not have been compelled to do so." This is the rule elsewhere. (9 R. C. L. 367, note 15.)

It is next contended that defendant was guilty of connivance, and for that reason should be denied the divorce. "Connivance is the corrupt consent of one party to the commission of the acts of the other, constituting the cause of divorce." (Sec. 5751, Rev. Codes 1921.) Plaintiff's contention is that, by remitting money to her monthly, defendant furnished the opportunity for her to live separate and apart from him, and thus brings himself within the rule of connivance which bars his right to a divorce. The law does not prohibit a husband from acting as a gentleman toward his wife after she has deserted him, under penalty that, if he does so, he will be deemed to have consented to the desertion. Though he may not be compelled to do so, where, as here, she had no folks to live with, the husband can still continue to provide for his wife's support during the pendency of the divorce action, the cross-complaint in which charges wrongful desertion by her, without being held to a "corrupt consent" to her acts of desertion.

It is also contended by plaintiff that the court was without jurisdiction to render a decree in favor of defendant. One of the issues tendered by the pleadings was whether plaintiff for more than one year immediately preceding the commencement of the action was a resident of the state of Montana. She alleged in her complaint that she had been. Defendant made a denial in his answer. The court's finding was as follows: "The court finds the issues made by the complaint of the plaintiff and the answer of the defendant in favor of the defendant and against the plaintiff." Thus it is argued that the court found that plaintiff was not a resident of the state for one year next preceding the commencement of the action within the meaning of section 5766, Revised Codes of 1921,

and therefore that the court was without jurisdiction to adjudicate defendant's cross-complaint.

Plaintiff's residence in the state for the statutory period ▆ must be alleged and proved in order to entitle plaintiff to the relief demanded. (*Rumping* v. *Rumping*, 36 Mont. 39, 12 Ann. Cas. 1090, 12 L. R. A. (n. s.) 1197, 91 Pac. 1057; *Clark* v. *Clark*, 64 Mont. 386, 210 Pac. 93.) But "the fact that the court had no jurisdiction over the cause of action set out in the complaint in no manner affected the jurisdiction of the court over the cross-complaint and reply or answer thereto." (*Wells* v. *Wells*, 27 S. D. 257, 130 N. W. 780, 781.) The cross-complaint is in effect a complaint in an independent action to which plaintiff in this instance made an appearance by her reply. Where, as here, defendant was a resident of the state for the required time, the court had jurisdiction to determine the cross-complaint. As much was held by necessary implication in *Coleman* v. *Coleman*, 23 Cal. App. 423, 138 Pac. 362; *Mansur* v. *Mansur*, (Tex. Civ. App.) 21 S. W. (2d) 38.

Lastly, it is contended by plaintiff that the evidence is in- ▆▆ sufficient to show that plaintiff deserted the defendant in 1920, as alleged in the cross-complaint. We may assume that the evidence was not sufficient to sustain the allegation of the cross-complaint that plaintiff deserted defendant in 1920. We may presume, as some of the evidence tends to show, that defendant consented that his wife might live separate and apart from him from 1920 until she commenced the divorce action. Here the court, in accordance with another allegation of the cross-complaint, found "that for more than one year last past immediately preceding the filing of the cross-complaint by the defendant in said action, and for more than one year last past immediately preceding the commencement of said action, the plaintiff has wilfully and without cause deserted and abandoned the defendant and still continues to so wilfully and without cause desert and abandon the defendant and to live separate and apart from him against his will and without his consent."

The complaint was filed by plaintiff on March 5, 1929. The cross-complaint was filed October 22, 1930. The record amply supports the finding that plaintiff deserted the defendant for more than one year immediately preceding the filing of the cross-complaint, and lived separate and apart from him without his consent. If, then, the time after the filing of the complaint may be considered in determining the period of the desertion, the finding must be sustained.

The general rule is that the time of the pendency of the divorce action between the parties cannot be counted as part of the period of desertion. (See the cases collected in the note in 41 A. L. R. 271.) But to this general rule is the well-established exception that the time will not be excluded where the deserting spouse institutes the divorce action in bad faith. (9 R. C. L. 361, note 4.)

The supreme court of California, in *Kusel* v. *Kusel*, 147 Cal. 52, 81 Pac. 297, 298, gave recognition to the exception, and said: "But on the other hand, it will not be contended that a wife who intends to desert her husband can, with that intent, leave his residence and live separate from him, and at the same time destroy the effect of the desertion by immediately beginning an unfounded action for divorce against him. The action must be begun in good faith in order to have the effect contended for. Under the facts found in this case, there can be no presumption that the wife acted in good faith. * * * In the absence of good faith, it is clear that the beginning of the action cannot transform a causeless abandonment of the marital domicile into an innocent absence, or into a separation brought about through the fault of the husband." Other cases announcing the same principle are collected in the note in 41 A. L. R. 271, 274. Particularly should this exception be given application where, as here, the parties were living separate and apart before the divorce action was commenced, and where the pendency of the divorce proceeding was not the cause of the parties living separate and apart.

It is true there is authority to the effect that the test of whether the deserting spouse brought her action in good faith

does not depend upon whether she succeeds or fails in the action. (*Weigel* v. *Weigel*, 63 N. J. Eq. 677, 52 Atl. 1123.) Here the evidence is without dispute that plaintiff promised to have the divorce complaint stricken from the docket. Her showing of any cruelty on the part of the husband was weak and unsatisfactory.

The lower court found against the plaintiff on her charge of cruelty. It may be doubted whether the court had any jurisdiction to adjudicate her cause of action after finding against her as to her residence. In any event, no complaint is made in this court of the finding against plaintiff on her charge of cruelty. Also, no complaint is made of the finding that she was not a resident of the state for the statutory time entitling her to maintain her action. She virtually concedes the correctness of that finding, and asserts that because thereof the court was without jurisdiction to do anything in the case other than to dismiss it.

The circumstances tend to support an implied finding that plaintiff did not bring her divorce action in good faith. (See *Saben* v. *Saben*, 77 Colo. 18, 234 Pac. 166.) Under the facts of this case it was proper, in computing the time of the desertion by plaintiff, to include the time after she commenced her action for divorce.

The court properly entered a decree for defendant, and it is affirmed.

Mr. Chief Justice Callaway and Associate Justices Galen, Ford and Matthews concur.

Rehearing denied May 5, 1932.