DOCOTOVICH, Appellant, v. DOCOTOVICH, Defendant.

No. 9042.

Submitted March 9, 1951. Decided April 18, 1951.

229 Pac. (2d) 971.

Mr. William T. Kelly, Billings, for appellant.
Respondent filed no brief nor made any appearance.
Mr. Kelly argued orally.

MR. CHIEF JUSTICE ADAIR:

August 14, 1945, Louis Doctovich, age 69, and Pearl D. Doctovich, age 45, intermarried at Billings. The groom had not been previously married. The bride was a widow with grown sons and daughters by her former marriage. The groom owned several small houses and other property in Billings including a modest three-room dwelling at 815 North 18th street where he resided and made his home. The bride's property consisted of about $50 in cash, a couple of bonds, value not stated, and nine acres of dry farm land located about five miles northeast of Billings.

At the time of the marriage the groom told his bride that

when he sold any of his property he was going to give her one half of the proceeds of such sales. A few days after the marriage the groom sold a house and received a down payment of $400 and thereupon gave one half of that amount to his bride. Later he sold a couple of city lots and gave her $1,065 of the proceeds of such sale.

Upon their marriage the bride moved into the groom's home on 18th street. The honeymoon was of short duration.

After living with her newly acquired husband but five days the bride left. She said she "couldn't stand his attitude" nor his political views. Subsequently the bride returned to Billings and went to live with her mother without informing her husband of her whereabouts. When the groom learned that his wife was at her mother's place he went to see her and asked her to come home with him which she did, but after three or four days she again became dissatisfied. Thereafter she left her husband on various occasions and for varying periods of time. She made two trips to Michigan where she visited a daughter. On one of the Michigan trips she stayed two months and the length of time she remained away on the other is not stated. At another time she spent three months in the state of Georgia visiting a son. She spent about a month with a daughter at Chico Hot Springs, Montana. She also made two trips to Wyoming, staying there for about two or three weeks on each occasion.

In December 1947, one of her sons came to live at the family home on 18th street where he resided for about three months.

About the time her son came to live with the couple Louis gave Pearl the $1,065, at which time the son commenced building a small house on defendant's nine-acre tract. By the first week in April this house was suitable for occupancy and on April 5, 1948, Pearl and her son left the family home on 18th Street and moved into the newly constructed house on Pearl's land where they took up their abode.

Seventeen months later, to wit, on September 8, 1949, Louis commenced this suit for divorce charging wilful desertion from and after April 5, 1948.

Prior to pleading to the action Pearl applied to the court for an order to show cause why Louis should not pay counsel fees to enable her to defend the suit. The order to show cause issued and thereafter on November 15, 1949, the Honorable Guy C. Derry, a judge of the thirteenth judicial district, made an order requiring Louis to pay $100 within five days for fees for Pearl's counsel.

On December 1, 1949, Pearl, by her counsel, filed an answer and cross complaint, denying the wilful desertion,—charging Louis with extreme cruelty and praying for a decree of separate maintenance.

On December 7, 1949, Louis filed an answer denying the alleged cruelty as well as the other affirmative matters pleaded by Pearl. Issue being joined the case was set for trial for a day certain. Two days prior to the date set for the trial, Pearl petitioned the court for the allowance of an additional counsel fee of $200, to which petition plaintiff interposed objections whereupon, and without hearing or determining Pearl's petition for additional counsel fees, the court ordered the trial of the cause continued to January 27, 1950, on which date the suit came regularly on for trial on the merits before the Honorable W. R. Flachsenhar, a district judge of the sixteenth judicial district, presiding instead of the Honorable Guy C. Derry who deemed himself disqualified.

At the trial, testimony was introduced by the respective parties and at the conclusion of the evidence time was allowed respective counsel for the filing of briefs.

On March 22, 1950, being almost two months after the trial of the suit, Judge Flachsenhar made an order stating that "the defendant is without funds or income" with which to pay her attorney's fees, and awarded Pearl an additional attorneys' fee of $200 and the further sum of $73.60 as costs.

Thereafter on May 18, 1950, the same judge made written findings of fact and conclusions of law which he incorporated in a decree wherein he denied Louis a divorce,—denied Pearl separate maintenance and dismissed the action.

From the order of March 22, 1950, and the decree of May 18, 1950, Louis has taken this appeal.

The testimony introduced before Judge Derry prior to the making of his order of November 15, 1949, requiring Louis to pay $100 as counsel fees for Pearl's attorney is not incorporated in the transcript on appeal filed in this court nor is it otherwise before us.

At the outset of the trial before Judge Flachsenhar, the wife's counsel called to the judge's attention the fact that Judge Derry's order of November 15, 1949, is in the file as is the wife's petition requesting $200 additional for attorneys' fees, at which time defendant's counsel concluded his remarks to the court by saying: ''I don't know whether the Court would care to make an order on that or not.'' Thereupon the court inquired: ''What is the position of counsel in this matter? What position do you take?'' Thereupon, counsel for the husband further objected to the allowance of additional attorneys' fees and specifically stated the grounds of such objections. Thereupon the following occurred:

''The Court: I wonder gentlemen if you are going to bind me by testimony given at a previous hearing.

''Mr. Wooster [defendant's counsel]: No, it occurred to me you might like to pass it for the present.

''The Court: I think so.''

The transcript on appeal shows no further proceeding during the trial on the petition for attorneys' fees and contains no evidence showing that Pearl could not proceed with her defense and with the trial without being awarded an additional counsel fee nor does it contain any evidence showing the necessity for such additional allowance.

Proceedings for divorce are purely statutory and the power ▮ which the court exercises is only that conferred upon it by statute.

The only statutory authority for allowing suit money or attorneys' fees is that contained in R. C. M. 1947, sec. 21-137, which, as far as is here pertinent, provides: ''While an action

for divorce is pending the court or judge may, in its or his discretion, require the husband to pay as alimony any money necessary to enable the wife to support herself \* \* \* or to prosecute or defend the action.''

The right of the wife to counsel fees is not an absolute right. To entitle her to such fees she must first make a prima facie showing of necessity on a proper hearing. 27 C. J. S., Divorce, sec. 216, pages 910-911 and cases cited. Compare State ex rel. La Point v. District Court of Second Judicial Dist., 69 Mont. 29, 37, 220 Pac. 88, and Grimstad v. Johnson, 61 Mont. 18, 22, 201 Pac. 314, 25 A. L. R. 351.

In Albrecht v. Albrecht, 83 Mont. 37, 47, 269 Pac. 158, 161, this court said: ''We have searched the record in vain to find any evidence whatever, offered on the part of the defendant, showing the necessity for the allowance of attorney fees as made by the court, and we hold that such allowance was an abuse of discretion and was error.''

In the instant case the trial court's fifth finding of fact reads:

''V. That the plaintiff is the owner of real estate in Billings, Montana, of the approximate value of $18,000.00 and of $1,-300.00 in cash in the bank. That the defendant has no funds or income, and the only property owned by her consists of nine acres of land, northeast of Billings, of the approximate value of $3,000.00. That defendant's property is agricultural and rented on a crop share basis, the net returns being only sufficient to pay the taxes thereon. That the property of defendant, and most of that of plaintiff, was acquired before their marriage in 1945.

''That the plaintiff paid the defendant the sum of $200.00 shortly after their marriage, and $1,065.00 on December 23, 1947, said amounts being one-half of the profits of the sale of property owned by him. *That the defendant is not financially able, as is the plaintiff, to pay her attorney's fees and costs of suit incurred herein.*'' (Emphasis supplied.)

The evidence shows that Pearl's land, exclusive of the house

and other improvements thereon, would readily sell for $3,000 or more.

We fail to find any evidence showing the necessity for the allowance of additional attorneys' fees or showing that without the allowance of such additional fees the wife would be unable to proceed with her defense. The record shows that at the time the application for additional fees was made the case was at issue; that prior to and throughout the trial she was continuously represented by able counsel and that it was not until almost two months after the trial had concluded and after the services of her attorneys had been performed that the trial court made the order allowing an additional fee of $200.

In Bordeaux v. Bordeaux, 29 Mont. 478, 75 Pac. 359, on rehearing, 32 Mont. 159, 80 Pac. 6, it was held that a district court has no power under the statute to allow counsel fees for past services, even during the pendency of the divorce proceedings, the only possible exception to this being, perhaps, where the allowance for such past services would be necessary to enable the wife to continue the future prosecution of the action or to make her defense. See also, Grimstad v. Johnson, supra, 61 Mont. at page 23, 201 Pac. 314.

Here, the wife having failed to make a proper showing of the necessity for the allowance of additional attorneys' fees, such allowance by the trial court was an abuse of discretion and error. Albrecht v. Albrecht, supra.

At the time of the trial the husband's working days were over. He was then past 74 years of age, crippled and suffering from the infirmities attendant upon old age. He testified: "I have my legs and eyes on the blink; about half blind, and my legs give up for several years; for the last fifteen or more." These facts were well known to the wife who testified: "Q. Do you know your husband is in poor health today? A. Yes I do. Q. Did you know that when you left him? A. Yes."

During the latter part of December, 1948, Louis was taken quite sick. He had a high fever and knew and remembered little of what was taking place about him. Upon learning of

her husband's illness Pearl returned to his home and there ministered to him for a very brief spell. In his then sick condition Louis thought she stayed one night and so testified. Pearl, on the other hand, testified that she stayed at his home for three days and nights. It is apparent that the trial court viewed this wholly unsolicited visit of the wife under the related circumstances as having interrupted and cured the wilful desertion which commenced on April 5, 1948, as is shown by the court's sixth finding of fact which reads:

"VI. That the plaintiff owned and suitably maintained at 815 North 18th Street, in Billings, Montana, the family dwelling house for the home of both parties, which was so occupied by them during their married life.

"That on April 5, 1948, about 2 years and 8 months after their marriage, the defendant moved with her son, Michael B. Mitchell, who had been living with them about three months, from the said family dwelling house. That she moved to a house partly built by her son, Michael, on a nine-acre tract of land owned by her, on the Roundup road, five miles northeast of Billings, Montana. That said house was shortly thereafter turned over by Michael to her other son, Joe Mitchell, who completed it, and with whom defendant is now living. That said house is the separate property of Joe Mitchell and can be moved from said nine acres, defendant claiming no interest therein.

"That defendant returned to the marital home for her things a few times after April 5, 1948, and also talked with plaintiff several times. That she returned to said marital home on or about December 22, 1948, and took care of the plaintiff during his illness, staying with him for three days and nights.

"*That the allegation in the complaint that the defendant deserted the plaintiff for more than one year next preceding the filing of this action, September 8, 1949, is not sustained by the evidence.*" (Emphasis supplied.)

R. C. M. 1947, sec. 21-112, provides: "If one party deserts the other, and before the expiration of the statutory period required to make the desertion a cause of divorce, *returns and*

*offers in good faith to fulfill the marriage contract, and solicits condonation,* the desertion is cured.'' (Emphasis supplied.)

In the record before us we do not find any evidence that Pearl's return to her seriously afflicted spouse was with any intention to fulfill or even resume the marriage contract, nor do we find any evidence that at such time she made any offer in good faith or otherwise to fulfill the marriage contract or that she at any time solicited condonation, or that either spouse did anything which would cure the wilful desertion which began on April 5, 1948, when without her husband's consent Pearl left him and went to live with her son in the house which the son had just built on her property.

Louis testified that at no time after April 5, 1948, did his wife ever ask him for any money and Pearl testified that she had never asked her husband for anything since she left him. There is likewise no evidence that the parties cohabited as husband and wife during the visit when Louis was sick or at any other time after April 5, 1948.

At the trial defendant's brother testified: ''A. Yes, I am her brother. Q. Would you state whether or not it is a fact that on November 7, 1947, when she was staying at your house, you and she being present, she said to you, 'When the old man (referring to her husband, Mr. Docotovich) kicks the bucket, it will all be mine?' A. That's what she said.''

On rebuttal defendant testified: ''Q. Your brother—I have missed his name. A. Mike Pyock. Q. He was on the stand and testified as to statements supposed to have been made to him made by you. You heard the statement that he made, did you? A. I heard it. Q. Did you make such a statement? A. Not that I know of.''

As was said in Lindsay v. Lindsay, 226 Ill. 309, 318, 80 N. E. 876, 879: ''It is beyond question that the appellee did not return with any intention of resuming marital relations in any manner, but apparently she had the view that by coming back to the house she would gain some advantage. * * * The fact that they lived together under the same roof is no proof of

condonation under the circumstances of the case, and the fact that she returned did not prove that the desertion did not continue. [Citing case.]'' See note in 155 A. L. R. at pages 130, 138, 140. Also Keezer on Marriage and Divorce (3rd Ed.), pp. 446 and 447, sec. 385.

In Cooper v. Cooper, 92 Mont. 57, 10 Pac. (2d) 939, 940, the court said: ''The law does not prohibit a husband from acting as a gentleman toward his wife after she has deserted him, under penalty that, if he does so, he will be deemed to have consented to the desertion.'' So here, if fever ridden Louis allowed his wife to occupy his bed in a small house with only one bed instead of sitting up all night, he was only acting as a gentleman toward his wife and did not thereby condone her prior desertion. See R. C. M. 1947, secs. 21-121, 21-122 and 21-123.

In 1 Nelson on Divorce and Annulment (2nd Ed.), Chapter 4, section 4.06, at page 70, it is said: ''Desertion in fact does not require that the parties no longer reside under a common roof, or that they cease speaking to one another, or that all acts of kindness or consideration between them cease.''

''The refusal of a wife, without just cause or excuse, to live at the domicile selected by the husband is desertion.'' 27 C. J. S., Divorce, sec. 36b, page 564. In the case at bar the court expressly found that there was no merit in the several alleged reasons which Pearl gave for leaving the marital home. Compare Damm v. Damm, 82 Mont. 239, 247, 266 Pac. 410.

We have carefully reviewed all questions of fact arising upon the evidence presented in the record as well as the questions of law involved and are of the opinion that the italicized portions of the court's findings of fact numbered V and VI, supra, being the last sentence in each of said numbered findings and the court's conclusion of law designated I, and also that portion of its conclusion of law designated III reading ''That this action should be dismissed'' are contrary to the evidence and the law.

It is therefore ordered that said designated portions of the

trial court's findings and conclusions and that portion of the decree denying plaintiff a divorce and adjudging that the action be dismissed be vacated and stricken.

The order allowing defendant additional attorneys' fees is set aside,—the decree is reversed and the cause is remanded to the district court with directions to amend and correct the trial court's findings of fact, conclusions of law and decree to conform with this opinion and to enter a decree of absolute divorce for the plaintiff Louis Docotovich. It is so ordered.

MR. JUSTICES METCALF, BOTTOMLY, FREEBOURN and ANGSTMAN concur.