SHIRLEY BARBOUR, Plaintiff and Respondent, v.
CHARLES BARBOUR, Defendant and Appellant.
No. 9696.
330 Pac. (2d) 1093.
Submitted March 20, 1958. Decided Aug. 12, 1958.
Rehearing Denied Nov. 18, 1958.

318

Loble & Picotte and Patrick F. Hooks, Helena, Henry Loble, Helena, and Patrick F. Hooks, argued orally, for appellant.

Toomey & Hughes, Helena, Michael J. Hughes, Helena, argued orally, for respondent.

MR. JUSTICE CASTLES:

This is an appeal by defendant, a divorced father, brought to reverse an order refusing to limit the residence of his children to Helena, Montana. The order continues custody of children in the plaintiff mother, without residence limitation, allows her costs and counsel fees, and conditions the father's right to visit the children upon his payment of $80 monthly for their support, promptly in the future as it shall fall due.

The father is appellant, the mother respondent. They insist that their concern is solely for the welfare of their children. The record proclaims their discord, but to some extent discounts

their interest. The sanctity of their marriage and the security of their children have been all but spent in bickering and dispute. It is too late for proper solution. The court must do the best it can. Although the "state makes itself a party to every marriage" (Franklin v. Franklin, 40 Mont. 348, 106 Pac. 353, 354, 26 L.R.A., N.S., 490) the state's interest as *parens patriae* is but cold comfort to children.

The children are four, one born July 5, 1946, one September 30, 1948, one December 12, 1949, and one January 18, 1952. Beginning with the divorce when the oldest child was eight years of age, although custody was decreed to the mother, residing in Helena, these children were first cared for by the paternal grandmother, in Nevada, then were taken to Texas and elsewhere by their father as he went about the west following construction work. How he cared for them during the time is not shown. Finally they were returned to Helena, Montana, and watched over by a kindly baby sitter while their mother worked. For the last four years they have known only a broken home. The record indicates that neither parent has remarried, that the children are still in Helena, Montana, and that reduced support money has been paid.

The parents of these four children were married in Parwon, Utah, December 23, 1944, moved to Helena during the year 1949, and were divorced in Lewis and Clark County, Montana in 1954. The father is a carpenter, the mother is a secretarial worker. The mother filed for divorce, alleging mental cruelty. She asked no alimony. The record implies that the mother was planning another marriage, never completed. The father was personally served, but did not appear. The mother was awarded custody of the four children, subject to "the right in the defendant to visit said children at any and all reasonable times which are agreeable to the plaintiff and which will not, in plaintiff's opinion, be detrimental to the children", $150 monthly payable through her for child support, costs and counsel fees. She was her only witness. The decree was given and entered by George W. Padbury, Jr.,

then a judge of the first judicial district. It is dated June 23, 1954.

Two days after the decree was entered, through counsel he then retained but no longer in the case, the father moved to set aside the default, alleging inadvertence and swearing, through his then attorney's affidavit, that he had been misled by his wife's then counsel. On hearing, he was not sustained. Eventually the wife's then attorney withdrew from the case and waived the fee decreed to him. This proceeding was heard by the Honorable William R. Taylor, called in from the third judicial district. Judge Taylor found that the wife's then attorney had attempted to reconcile the parties but that the husband had refused reconciliation and had written the wife to proceed with the divorce. Judge Taylor's order is dated August 28, 1954. From it no appeal was taken.

As stated, the decree was awarded to the mother and was entered June 23, 1954. With the exception of $125.76, paid into court on September 19, 1955, to purge himself of contempt, the father contributed nothing to the mother toward the support of the children until after the child support money had been reduced on September 30, 1955, from $150 to $80 per month. This reduction was ordered by the Honorable Jack R. Loucks, judge of the fifteenth judicial district, called in to hear further proceedings between the parties. Judge Loucks also ordered that "the Defendant's right of reasonable visitation is made contingent upon the payment of $80 per month to said Plaintiff for the support, care and maintenance of said minor children. In the event the Defendant does not comply with the payment as herein set forth he is without right to visit said children at any time or place."

Present counsel for the respondent wife argue that the time ▮ has passed to appeal this order conditioning visitation upon prompt payment of child support money. This is irrelevant. Generally the court's jurisdiction is continuing in child custody matters (R.C.M. 1947, sections 21-137, 21-138) and,

specifically, the present appeal is taken from a later order entered by Judge Loucks on February 4, 1956.

The foregoing will suffice for review of a weary record of legal moves, accusations, charges and countercharges reflecting little credit upon the parents and even less solicitude for the welfare of their children. We have read it all.

On December 9, 1955, the divorced husband filed the motion for modification out of which this appeal has developed. He charged that the mother contemplated taking the children to reside with her in California. On this allegation he moved for an order restricting the residence of the children to the City of Helena, because, so he said, he could not visit them in California while conducting a construction business he said he proposed to commence in East Helena, with the earnings of which he said he intended to support himself. He concluded that any change in the residence of the children would prejudice their welfare. We are convinced neither by the father's logic nor by his conclusion. Primarily he urges his own convenience.

The mother countered with a demand that the father's visits to the children at her residence in Helena be limited to a day and time certain, and preferably not at mealtime. She suggested that the construction plans were phonies, claimed the frequency of the father's visits was in itself unreasonable, and pointed out that if the father was as anxious to work as he alleged he could more easily secure employment in California where he was complaining she intended taking the children. The mother added that as to her moving anywhere out of Helena, she did not know what she intended to do. The record supports her.

In other testimony the mother charged that once during the interim between the divorce and the permanent return of the children to Montana, the father suddenly appeared one night in Helena at the mother's residence, told her the older children were outside in his car, thrust the youngest child into her arms, struck her with a homemade sap, took the child

back and as suddenly departed. Countering, the father attacked the mother's moral fitness for custody of children and testified she once kicked him in the back.

Charged with the well-being of four children, faced with the dilemma implicit in a record for which the foregoing samples will more than suffice, and struggling for a proper solution no longer to be found, the court continued custody in the mother who, in any event, then had an established abode and a kindly baby sitter, refused to restrict residence of the children and limited visitation by the father in an order obviously as unsatisfactory to the district judge who felt compelled to issue it in such detail as to the father who brings this appeal. This order is dated February 2, 1956.

The order concludes:

"2. That the plaintiff be awarded the care, custody and control of the minor children * * with the right in the defendant to visit said children in the custody of plaintiff on Saturday of each week for as long as he wishes between the hours of 1:00 o'clock p. m. and 8:00 o'clock p. m., and, also on the birthdays of each of said children and on Christmas when such days do not fall on Saturday, except when defendant is prevented from making such visits by the illness or absence of the children from their place of residence, in which events defendant shall have the right to make up such lost visits by a second visit in subsequent week or weeks on a day of his selection, on notice to plaintiff, to the end that defendant shall have the right to visit said children in plaintiff's custody fifty-two (52) times each year and on their birthdays and on Christmas when such days do not fall on Saturday; *provided, however,* that defendant's right of visitation is made contingent upon the payment of $80 per month to plaintiff for the support, care and maintenance of said minor children. In the event that Defendant does not comply with this Court's order * * * he is without right to visit said children at any time or place."

Three specifications of error are raised: (1) The allowance

by the court of respondent's costs and counsel fees in an order modifying child custody; (2) the refusal of the court to restrict residence of the children to its jurisdiction; and, (3) the order of the court conditioning appellant's right of visitation upon his prompt payment of money decreed for the support of his children. The first two of the three specifications are controlled by a recent decision of this court; the third is controlled by two earlier decisions for this state. We discuss the specifications seriatim.

(1) Allowing costs and counsel fees on motion to modify child custody.

Appellant objects to paying respondent's costs and counsel fees. This specification of error would have been controlled by McDonald v. McDonald, 124 Mont. 26, 218 Pac. (2d) 929, 15 A.L.R. (2d) 1260, with annotation at page 1270, until that decision was overruled by Wilson v. Wilson, 128 Mont. 511, 278 Pac. (2d) 219. The McDonald decision allowed costs and counsel fees in child custody modifications under the continuing jurisdiction of the court in aid of the welfare of the children and under its inherent equitable power. (See cited opinion for authorities.) The Wilson decision denied costs and counsel fees in similar circumstances on the theory that the divorce was no longer pending, citing R.C.M. 1947, sections 21-137, 93-8706; McVay v. McVay, 128 Mont. 31, 270 Pac. (2d) 393. Briefs of counsel recognize the opposed position of the two decisions.

The opinion we have now rendered in Trudgen v. Trudgen, 134 Mont. 174, 329 Pac. (2d) 225, overruling Wilson v. Wilson, supra, and reinstating McDonald v. McDonald, supra, is authority for sustaining the order of the district court allowing costs and counsel fees to the respondent mother. This opinion should be consulted for citation of authorities equally applicable here. No further discussion is presently required. The record reflects no change in the circumstances of the children. The circumstances of the parents, their personal intentions and their bickering, remain about the same. In any event,

these are relevant only as they affect the children. Nothing before us suggests that the lot of these children would be in any manner improved by any change in their custody. We find no error.

(2) Restricting residence of children *in custodia legis.*

The immediate proceedings, in which this appeal is taken, originate with appellant's application for an order requiring that the respondent mother "shall not remove said children from the City of Helena, Montana, or from the jurisdiction of this [first judicial district] court or from the State of Montana." This application was denied.

The effect of R.C.M. 1947, section 21-138, is to make all ▇ child custody orders interlocutory in nature, discretionary with the district court, and conditioned by what the district court in its sound discretion believes to be for the well-being of the children concerned. Limitations on residence of children are to be imposed only in furtherance of the best interests of the children; inconvenience to parents is irrelevant. This is an elementary principle, repeated in the recent decision of Trudgen v. Trudgen, supra, and controlling here. See authorities there cited, including State ex rel. Graveley v. District Court, 119 Mont. 276, 174 Pac. (2d) 565; Aiken v. Aiken, 120 Mont. 344, 185 Pac. (2d) 294; and Barham v. Barham, 127 Mont. 216, 259 Pac. (2d) 805.

We find no abuse in the discretion exercised by the district ▇▇ court in refusing to restrict the residence of the children. Their well-being is not so much dependent upon continuance or change of their present residence as upon change in their parents' hearts. It is *the children* of broken homes who suffer most. "Each case must be decided upon its own peculiar facts and circumstances." Haynes v. Fillner, 106 Mont. 59, 71, 75 Pac. (2d) 802, 806. As this court observed during argument on the present appeal, "sometimes there is *no proper* solution—you just do the best you can." We find no error.

(3) Conditioning right of visitation upon prompt payment of money decreed for support of children.

We consider the provisions we have quoted from the original ▮ divorce decree which subjected the father's right of visitation to the mother's decision as to what was not reasonable, a ready-made source of dispute. We quote with approval from 2 Nelson on Divorce and Annulment, section 15-26, pages 206, 208, (2d ed.): "* * * the order [of visitation] should not make the right of visitation contingent upon an invitation from the party having the custody of the child, or require the consent of one parent for the other to visit the child, or provide that the parent shall have the right of visitation only at such times as may be convenient to the * * * [other parent], thereby leaving the privilege of visitation entirely to the discretion of the party having the child in custody." Fortunately visitation provisions of the original decree have been superceded by a modifying order.

We cannot, however, entirely concur that "Neither should a father's right of visitation be made conditional upon his payment of periodical installments of alimony * * * irrespective of however effective it might prove to be as a collection agency." 2 Nelson op. cit. supra at 208. But see Sweat v. Sweat, 238 Iowa 999, 1009, 29 N.W. (2d) 180, 185, at least to the extent that "alimony" is decreed for support of children.

Although R.C.M. 1947, section 21-137, uses the term "alimony" ▮ generically to mean "any money necessary to enable the wife to support herself or her children," the distinction we here intend is that made in R.C.M. 1947, section 21-139, which provides that "upon proof of the remarriage of a divorced wife, * * * the court must order a modification of the judgment by annulling the provisions of the judgment directing the payment of money for the support of the wife." It is customary in this state to refer to the payments which are terminated by the wife's remarriage as "alimony" and the payments for support of children, not terminated by the wife's remarriage, as "maintenance money," "support money" or as "money for child support," etc. The distinction is practical and readily understood.

Recognizing this distinction, and referring here only to money ▇▇ intended for child support, we take the view that, subject to *honest inability to pay,* if a parent cares too little for the children to support them, that parent cares too little for the children to see them. However, the law, the children must eat. He who seeks equity must do equity.

With or without decrees, modifying orders, prosecutions for non-support, undertakings, contempt citations and uniform reciprocal statutes for child support, as a practical matter the necessities of life must be provided. Where inability to support is honest fact and neither fault nor subterfuge, nonsupport is seldom brought to the attention of the courts. Animus is lacking, inability is genuine and citation is futile.

To the extent they are able, parents must provide necessaries ▇▇ for their children. R.C.M. 1947, section 61-115. Failure to do so renders parents liable under long standing civil and criminal statutes (R.C.M. 1947, section 61-125, 61-126), and subject to the provisions of the uniform act for Reciprocal Enforcement of Support, approved in this state March 5, 1951, and appearing as R.C.M. 1947, sections 94-901-1 through 94-901-18. Clearly the law intends that *parents* shall support their children, as the law likewise intends that children shall support their indigent parents. R.C.M. 1947, section 61-124. The state is a parent by proxy. It can only do the best it can.

The foregoing are ancient principles worded in modern statutory form stemming from the Decalogue and the Christian gospels fundamental to the court's continuing jurisdiction and inherent equitable power in matters involving the well-being of children of parents divorced. Such principles are what Mr. Justice Brewer termed ''organic utterances. They speak the voice of the entire people.'' Church of the Holy Trinity v. United States, 143 U. S. 457, 470, 12 S. Ct. 511, 516, 36 L. Ed. 226 decided February 29, 1892.

''Thus defendant's obligation to pay the required money [child support] is not simply an outgrowth of the divorce suit * * * *it is a social and parental obligation imposed by law.*

The infant became a ward of the respondent court when its parents submitted themselves to the jurisdiction of the respondent court for an adjudication of their domestic difficulties * * *'' State ex rel. Lay v. District Court, 122 Mont. 61, 72, 198 Pac. (2d) 761, 767. (Emphasis supplied.)

We find no abuse of discretion in that portion of the district court's order of February 2, 1956, conditioning appellant's right of visitation upon his prompt payment of money for the support of his children. We have held, and we repeat, that where, as here, certainly up to the time support money was reduced from $150 to $80 monthly (an amount the testimony shows is approximately the monthly wage of the baby sitter), defendant ''has deliberately, wilfully and continuously refused to make the payments required by the decree, * * * he is not entitled to petition for modification of the decree * * * unless the best interests and welfare *of the children* require the modification.'' Kelly v. Kelly, 117 Mont. 239, 244, 157 Pac. (2d) 780, 782. (Emphasis supplied.) This ruling certainly was applicable to appellant from the date of the divorce decree until the children were returned to Montana, and under comparable circumstances will be equally applicable again.

There is another decision even more in point. Some forty years ago this court, speaking through Mr. Justice Holloway, announced as law for this state that ''conditions under which the father's visits may be made, the time, place, and duration of them, his conduct during such visits * * * are all proper subjects for regulation by the court. * * * When he submitted to the jurisdiction of this court, he was there for any proper order the court might make, and if the court requires * * * as a condition precedent to his right to visit his child, that he make further reasonable contributions to its support [the dispute was over payments under a separation agreement; ability or inability to make the payments was not an issue in the case], he will not be in any position to complain.'' Kane v. Kane, 53 Mont. 519, 525, 165 Pac. 457, 459.

On the third specification of error, under the circumstances of this case, and so long as the father continues able to make the reduced $80 monthly payment ordered by Judge Loucks for the support of the children, we find no impropriety in the ruling of the district court.

The order is affirmed.

MR. CHIEF JUSTICE HARRISON, and THE HONORABLE GEORGE J. ALLEN, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, concur.

MR. JUSTICE ANGSTMAN: (concurring in part and dissenting in part).

In concur in all parts of the foregoing opinion except that part which approves of the court's order making the father's visitation of the children dependent upon his contributions to their support. If he fails to make the payments for their support there are ample means of testing his ability to do so and of forcing him to do so, if able.

The best interests and welfare of the children should not be confused with the father's ability or willingness to provide for their support.

The general language quoted from the case of Kane v. Kane, 53 Mont. 519, 165 Pac. 457, does not appeal to me as correct.

I think that part of the court's order making the father's right of visitation dependent upon support money being paid should be modified accordingly.

MR. JUSTICE ADAIR: (dissenting).

On June 23, 1954, the plaintiff, Shirley Barbour, procured an absolute divorce from the defendant, Charles Barbour, who is a carpenter by trade.

By the terms of the decree Shirley was awarded custody of the four minor children of the parties and $150 per month for their support; the defendant Charles was ordered to pay to the plaintiff for Shirley's attorney a fee of $150 and it was

adjudged that the plaintiff Shirley receive a one-half interest in the joint property of the parties wherever situate.

No appeal was taken from the above decree and judgment of divorce within six months after the entry thereof, R.C.M. 1947, section 93-8004, subd. 1, or otherwise or at all so that on December 23, 1954, the time for appeal passed and expired; the judgment of divorce became and was final and conclusive and the status of the parties as unmarried persons became fixed. R.C.M. 1947, section 21-102. See State ex rel. McVay v. District Court, 126 Mont. 382, 251 Pac. (2d) 840, 845; McVay v. McVay, 128 Mont. 31, 270 Pac. (2d) 393; Wilson v. Wilson, 128 Mont. 511, 278 Pac. (2d) 219.

On February 2, 1956, being more than a year after the time allowed by law for appealing from the judgment and decree had expired, the Honorable Jack R. Loucks, district judge presiding in the district court for Lewis and Clark County, made an order in favor of the plaintiff, Shirley Barbour, in special proceedings involving the custody and support of the minor children of the parties and the right of the defendant, Charles Barbour, to visit such children.

In the order so made, Judge Loucks, *inter alia*, ordered that the defendant Charles pay to the plaintiff Shirley's lawyer an attorney fee of $150 for services theretofore rendered by him in such special proceedings and further ordered "that defendant's right of visitation is made contingent upon the payment of $80 per month to the plaintiff for the support, care and maintenance of said children. *In the event that Defendant does not comply with this Court's order that he pay to plaintiff the sum of Eighty Dollars* ($80) per month for the support * * * of said minor children, *he is without right to visit said children at any time or place.*" (Emphasis supplied.)

On March 28, 1958, the defendant, Charles Barbour, took this timely and proper appeal from the above order so made in such special proceeding.

First, the defendant Charles challenges the authority and power of the district judge to require him to pay to the plain-

tiff Shirley's attorney, the sum of $150 as fees for his services on said special proceedings so had and done at a time when the action for divorce was no longer pending.

Section 21-137, R.C.M. 1947, so far as is here pertinent provides:

"*While an action for divorce is pending* the court or judge may, in its or his discretion, require the husband to pay as alimony any money necessary to enable the wife to support herself or her children, or to prosecute or defend the action." Emphasis supplied.

The above-quoted portion of section 21-137 is the only statutory authority giving power to a court to grant alimony and expenses to a wife. Bordeaux v. Bordeaux, 29 Mont. 478, 482, 75 Pac. 359; Wilson v. Wilson, supra. Also see Docotovich v. Docotovich, 125 Mont. 56, 60, 229 Pac. (2d) 971, and Bissell v. Bissell, 129 Mont. 187, 196, 197, 284 Pac. (2d) 264.

Section 21-137 commences with the qualifying phrase,

"*While an action for divorce is pending*" which expressly restricts and limits the court's power to require *the husband* to pay *the wife* the money necessary to enable *the wife* to prosecute or defend the action for divorce to only that period of time during which such action for divorce shall be deemed by law to be pending.

Section 93-8706, R.C.M. 1947, provides:

"An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or *until the time for appeal has passed,* unless the judgment is sooner satisfied." (Emphasis supplied.)

An action for divorce is a civil action. In this state such action is commenced by filing a complaint in a district court of the state. Section 93-3001, R.C.M. 1947.

Under the plain provisions of the above-quoted statutes the instant action for divorce was commenced at the time the plaintiff Shirley filed her complaint in the district court for Lewis and Clark County from which time it was pending until from and after December 23, 1954, whereon the time for appeal

passed and expired with no appeal taken from the final decree and judgment of divorce entered June 23, 1954, which dissolved the marriage, section 21-101, R.C.M. 1947, and restored Shirley and Charles "to the state of unmarried persons." Section 21-102, R.C.M. 1947. Thus under the plain provisions of section 93-8706, from and after December 23, 1954, the action for divorce so commenced by Shirley ceased to be pending whereupon the authority and power of the court or judge to order the defendant Charles to pay the fees of the plaintiff Shirley's attorney became and was exhausted, as this court decided, held and adjudged in its opinion in the Wilson case, supra, pronounced December 2, 1954, with petition for rehearing denied and remittitur issued on January 11, 1955, at which time this court remanded the cause to the district court for Cascade County with directions to amend its order of modification of February 2, 1956, by striking that portion allowing plaintiff her attorney's fees in the child custody proceedings.

This court's judgment in the Wilson case, supra, is controlling upon all questions properly within the issues, which the opinion shows the court deliberately considered. Spratt v. Helena Power Transmission Co., 37 Mont. 60, at page 77, 94 Pac. 631, at page 634.

"All that is necessary to make a decision of this court authoritative is that there shall appear to have been an application of the judicial mind to the precise question adjudged and that the point was fully considered." Montana Horse Products Co. v. Great Northern Ry. Co., 91 Mont. 194, at page 210, 7 Pac. (2d) 919, at page 925.

All the above was had and done in the Wilson case. It therefore follows that this court's decision in the Wilson case governs, the rule being: "The decisions of this court are controlling until reversed or modified by the court itself." Montana Horse Products Co. v. Great Northern Ry. Co., supra, 91 Mont. at page 211, 7 Pac. (2d) at page 925.

In State ex rel. Mueller v. Todd, 117 Mont. 80, at pages 85,

86, 158 Pac. (2d) 299, at page 302, this court speaking through Mr. Justice Angstman said:

"We point out that the procedure for claiming damages prescribed in the case of State ex rel. Golden Valley County v. District Court, 75 Mont. 122, 242 Pac. 421, has been disapproved in State ex rel. Phillips v. Ford, 116 Mont. 190, 151 Pac. (2d) 171. But since the Phillips case was not decided until long after relator had adopted and followed the procedure prescribed in the Golden Valley County case, this case is controlled by the latter."

So here, since the case of Trudgen v. Trudgen, 134 Mont. 174, 329 Pac. (2d) 225, which assumes to overrule the Wilson case, supra, was not decided until July 30, 1958, being long after the defendant, Charles Barbour, and his counsel had placed their reliance upon and had consistently followed, contended for and cited in defendant's briefs and in his oral argument before this court the rule proclaimed in the Wilson case, the instant Barbour case is controlled by the Wilson case and not by the Trudgen decision.

In State ex rel. Steinfort v. District Court, 111 Mont. 216, at pages 236, 237, 107 Pac. (2d) 890, at page 900, Mr. Justice Angstman, dissenting, wrote: "If the decision in [State ex rel. Steinfort v. District Court] 109 Mont. 410, 97 Pac. (2d) 341, which followed the Davis case [Davis v. Superior Court, 35 Cal. App. 473, 170 Pac. 437], be regarded as erroneous—a point which I do not concede—still it is the law governing the case, and claimant had a right to rely upon it and the Davis case. To now hold that she could not rely upon those decisions is, in my opinion, working a gross and unjustifiable hardship.

"This court has declared against the proposition that a decision overruling a former case should be given a retroactive effect. Montana Horse Products Co. v. Great Northern Ry. Co., 91 Mont. 194, 7 Pac. (2d) 919; Continental Supply Co. v. Abell, 95 Mont. 148, 24 Pac. (2d) 133. Such is the rule generally. 15 C.J. 961; 21 C.J.S., Courts, section 194, page 328, notes 95 and 96."

In Continental Supply Co. v. Abell, 95 Mont. 148, at page 171, 24 Pac. (2d) 133, at page 140, this court said:

"The rule that a judicial interpretation of a statute becomes a part of the statute itself, so far as contract and property rights are concerned, and that changes in judicial interpretation should not be given retroactive effect, has received judicial sanction by many courts. [Citing cases. * * * 'A change in the judicial view of the law by a subsequent decision could not amount to more than a change in the law by legislation,' and, of course, could act prospectively only. In re Knowles' Estate, 295 Pa. 571, 145 A. 797, 63 A.L.R. 1086; Klocke v. Klocke, 276 Mo. 572, 208 S.W. 825; and see 7 R.C.L. 1010, note 20, and cases there cited.

"It is unnecessary that it be shown that reliance was actually placed by defendants upon the former decisions. *Reliance thereon will be presumed.* Bank of Philadelphia v. Posey, 130 Miss. 825, 95 So. 134." Emphasis supplied.

In each session of the Legislature held since the pronouncement of this court's decision in the Wilson case, attorneys engaged in divorce litigation have caused to be presented to the Legislative Assembly proposed amendments to section 21-137, R.C.M. 1947, which if enacted into law, would remove from the statute the restriction and limitation imposed by the phrase *"While an action for divorce is pending"* upon the authority granted to a court or judge in divorce actions by said section 21-137.

The Thirty-fourth Legislative Assembly (1955), by rejecting House Bill No. 329, and the Thirty-fifth Legislative Assembly (1957), by rejecting House Bill No. 289, bolstered the construction of section 21-137 given by this court in the Wilson case, supra. The Legislature declined to change or overrule the decision in the Wilson case, supra, by changing and amending the statute upon which the decision rests. Now by construction, my brothers on the court do that which the Legislature has twice refused to do by legislation.

"The province of this court is to interpret the law as it

finds it rather than to legislate." Montana Horse Products Co. v. Great Northern Ry. Co., 91 Mont. at page 206, 7 Pac. (2d) at page 923.

In Bottomly v. Ford, 117 Mont. 160, 168, 157 Pac. (2d) 108, 112, this court said:

"The fact that the Legislature has not seen fit by amendment to express disapproval of a contemporaneous or judicial interpretation of a particular statute, has been referred to as bolstering such construction of the statute, or as persuasive evidence of the adoption of the judicial construction. In this respect, it has been declared that where a judicial construction has been placed upon the language of a statute for a long period of time, so that there has been abundant opportunity for the law-making power to give further expression to its will, the failure to do so amounts to legislative approval and ratification of the construction placed upon the statute by the courts, and that such construction should generally be adhered to, leaving it to the legislature to amend the law should a change be deemed necessary." Also see: Adams v. Building Service Employees I. U., Local No. 6, 197 Wash. 242, 84 Pac. (2d) 1021, at page 1023; Ryan v. State Industrial Accident Commission, 154 Ore. 563, 61 Pac. (2d) 426, at page 428; Bertozzi v. Swisher, 27 Cal. App. (2d) 739, 81 Pac. (2d) 1016, at pages 1018, 1019.

It is quite apparent that the Wilson case was fully considered by each of the justices then comprising this court upon oral argument—in studying the briefs submitted—in preparation of the three separate opinions filed and in determining the petition for·rehearing so that from and after the issuance of the remittitur out of this court on January 11, 1955,·the entire legal profession and others were entitled to place reliance thereon. Montana Horse Products Co. v. Great Northern Ry. Co., 91 Mont. at page 211, 7 Pac. (2d) at page 925.

In State v. Simanton, 100 Mont. 292, 306, 49 Pac. (2d) 981, 985, this court said:

"In determining the course to be followed in the trial of the instant case, counsel for the defense was justified in relying upon the action of this court in the Ebel case [State v. Ebel, 92 Mont. 413, 15 Pac. (2d) 233], assured in mind that this court would follow that decision, so recently handed down, in considering this appeal. Therefore, in justice to counsel and to the end that the profession generally should not be imbued with a feeling of uncertainty in the trial of cases and in advising clients, the judgment in the present case should not be allowed to stand by invoking the Georgia rule at this time, whatever the rule we may now announce for the future."

On February 2, 1956, when making his order of modification in the instant Barbour case, No. 9696, requiring the defendant, Charles Barbour, to pay the plaintiff Shirley the fees for her lawyer it became and was the duty of District Judge Loucks to accept, follow and obey the rule announced by this court in the Wilson case more than one year before. This duty the judge failed and omitted to perform.

Likewise on February 4, 1956, when making his order of modification in the Trudgen case, Appeal No. 9698, requiring the defendant, Dale Trudgen, there to pay the plaintiff Sharon the fees for her lawyer it became and was the duty of District Judge Besancon to abide by, follow and apply the rule pronounced by this court in the Wilson case. This duty the judge failed and omitted to perform.

To permit the district judges to thus apply a different rule than that announced and approved in the Wilson case would be to allow the district judges to overrule the supreme court and to reverse and set at naught its decision.

A divorced father has a *natural right* of access to his minor child or children; even though by decree entered in an action for divorce their care and custody has been awarded to the divorced mother; and the exercise by the divorced father of such *natural right* should not be made conditional upon his

prompt payment of the periodical installments of alimony when and as they become due.

In 27 C.J.S. Divorce, section 312, at page 1178, it is said: "A divorced parent has a natural right of access to his child awarded to the other parent, and only under exceptional circumstances should the right or privilege be denied, but the welfare of the child must receive the paramount consideration in the determination of this matter, and this privilege must yield to the good of the child. Even the guilty party is usually allowed this privilege unless morally unfit to associate with the child."

In Fitch v. Fitch, 207 Iowa 1193, 1197, 224 N.W. 503, 504, 505, the defendant father did not complain of that part of the trial court's judgment granting the plaintiff mother the custody of the child of the parties, then three and one-half years old but he did appeal, *inter alia,* from that portion of the decree which reserved to the defendant "the right to visit said child and to have said child visit him at such reasonable times and period as will not interfere with said child's education and training; *this privilege to be defendant's (appellant's) so long as he complies with the terms of this decree relative to the payment of monthly alimony."* As to such quoted provision of the decree the Supreme Court of Iowa said:

"Evidently the purpose of the italicized statement was to effect the collection of alimony. Other reasons for it do not appear. Visitation or denial thereof should not be made to appease one parent or punish the other. Such right of visitation should be allowed or denied, according to what is best for the child. Its welfare must receive paramount consideration. Bedolfe v. Bedolfe, 71 Wash. 60, 127 Pac. 594; Wilkins v. Wilkins, 84 Neb. 206, 120 N.W. 907; Waldref v. Waldref, 135 Minn. 473, 159 N.W. 1068. Unless these visitations with the father will in some way injure the child, they are not to be prohibited, under the facts and circumstances of this case. The associations between father and daughter should not be terminated merely because alimony is not paid. The good there is in the

father ought to be afforded the child, and in addition to that the little girl is entitled to have whatever benefit there may be in the continued acquaintance and association with her grandparents. Denial of the father's visitation may make impossible or unpleasant such desirable relationship with the grandparents. Hence that part of the decree set out in italics above should be canceled and annulled, so that visitation between the father and daughter will not be interrupted by the nonpayment of alimony.''

The terms and conditions imposed upon Charles Barbour, the defendant father, by the modification order of February 4, 1956, are so harsh, humiliating and discouraging as to defeat the very purpose for which apparently they were imposed. In my opinion the concluding proviso of the order amounts to an abuse of discretion, hence it should be cancelled, annulled and stricken, said proviso reading:

''* * * *  *provided, however,* that defendant's right of visitation is made contingent upon the payment of $80 per month to plaintiff for the support, care and maintenance of said minor children. In the event that Defendant does not comply with this Court's order that he pay to plaintiff the sum of Eighty Dollars ($80) per month for the support, care and maintenance of said minor children, he is without right to visit said children at any time or place.''

*"Right To Work Law"* The majority opinion in the Trudgen case, supra, holds that "when read together, with or without the general procedural provisions of section 93-8706, supra, sections 21-137, 21-138, and 21-139 specifically referring to expenses 'as alimony' *pendente lite,* to the modification of child custody orders, and to the support of the wife after separation is granted, clearly continue jurisdiction and discretion in the court *until the children of divorced parents have attained majority and until the divorced wife has remarried or has died."* (Emphasis supplied.)

By such construction of the controlling statute, the majority

338

opinion in the Trudgen case has altered, changed and amended the provisions of section 21-137 to provide:

"*In* an action for divorce *or upon any action or proceeding for modification of any order or decree therein,* the court or judge may in his discretion, *and until the children of the divorced parents have attained majority and until the divorced wife has remarried or has died,* require the husband *or the former husband* to pay any money necessary to enable the wife *or the former wife* to prosecute or defend the action *for divorce or any proceeding instituted to compel compliance with the decree or any order of the court respecting the payment of costs, alimony or attorney fees.*"

Thus have four lawyers on this court by their construction of section 21-137, R.C.M. 1947, provided the lawyers of this jurisdiction with a right to work law, which, after the marriage has been dissolved and the action to procure such dissolution has ceased to be pending gives to the woman's lawyer the right *to work* for the divorced woman and *to work* wholeheartedly against the *divorced man* and the right to collect from the *divorced man* the attorney fees for which the woman bargained, but which must be paid by the man against whom the lawyer worked.

Here, long after the absolute, final and conclusive dissolution of his marriage to Shirley Barbour, the divorced carpenter, Charles Barbour, must pay his own attorneys for the work they did *for him* and he must also pay the divorced Shirley's attorney for the work they did *against him.* So says the judicial legislation by and for the lawyers here proclaimed, but not the lawful enactments of the Legislature found in sections 93-8601, 21-137 and 93-8706, R.C.M. 1947.

The Legislature has declared, "In the construction of a statute the intention of the legislature * * * is to be pursued if possible" (section 93-401-16), and "the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted,

or to omit what has been inserted.'' (section 93-401-15) Let us obey the law as it is written.

The majority opinion in the instant case of Barbour v. Barbour states that the opinion which the majority rendered in Trudgen v. Trudgen, supra, overruling Wilson v. Wilson, supra, and reinstating McDonald v. McDonald, supra, ''is authority for sustaining the order of the district court allowing costs and counsel fees to the respondent mother'' Shirley Barbour.

In my opinion the construction so given section 21-137, R.C.M. 1947, in the McDonald case, the Trudgen case and now in the instant Barbour case constitutes judicial legislation and the invasion of the province of the Legislature. Such action on the part of this court is:

1. Violative of the mandate of section 1 of article IV of the Constitution of Montana which provides that ''no person or collection of persons charged with the exercise of powers properly belonging to one of these departments [i. e., legislative, executive, judicial] shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted.'';

2. Violative of the mandate of sections 93-401-15 and 93-401-16 in that the construction so given section 21-137 fails to give effect to the clear intention of the Legislature which in 1895 enacted the latter statute:

3. Violative of the provisions of section 93-401-15, R.C.M. 1947, for the reasons that in construing section 21-137 this court: (a) has inserted and substituted the word ''In'' for the word ''While'' as the first word of section 21-137, (b) has omitted from the statute, 21-137, the words ''is pending,'' and (c) has inserted in lieu of the words ''is pending'' the seventy-one italicized additional words shown in the above statute, 21-137, as construed by the majority opinion; and

4. Is contrary to and in effect overruling the rulings and holdings of this court in the following decisions of this court, viz.: Bordeaux v. Bordeaux, supra; Spratt v. Helena Power Transmission Co., supra; Rumping v. Rumping, 36 Mont. 39,

91 Pac. 1057, 12 L.R.A., N.S., 1197; Decker v. Decker, 56 Mont. 338, 345, 346, 185 Pac. 168; State ex rel. Wooten v. District Court, 57 Mont. 517, 522, 525, 189 Pac. 233, 9 A.L.R. 1212; Grimstad v. Johnson, 61 Mont. 18, 22, 23, 201 Pac. 314, 25 A.L.R. 351, 361; Montana Horse Products Co. v. Great Northern Ry. Co., supra; State v. Simanton, supra; Albrecht v. Albrecht, 83 Mont. 37, 46, 269 Pac. 158; Wilson v. Wilson, supra; Bissell v. Bissell, supra; Continental Supply Co. v. Abell, 95 Mont. 148, 24 Pac. (2d) 133; Bottomly v. Ford, supra; State ex rel. McVay v. District Court, supra; McVay v. McVay, supra; Crenshaw v. Crenshaw, 120 Mont. 190, 215, 182 Pac. (2d) 477; Emery v. Emery, 122 Mont. 201, 200 Pac. (2d) 251, 254; Shaw v. Shaw, 122 Mont. 593, 208 Pac. (2d) 514, 525; and Docotovich v. Docotovich, 125 Mont. 56, 60, 229 Pac. (2d) 971.

While the legislative assembly could, if it saw fit, enact a statute authorizing courts to allow a divorced woman her counsel fees and expenses and costs incurred in seeking to alter or modify the court's orders awarding custody of minor children and allowing a divorced parent reasonable visitation privileges long after the decree of absolute divorce has become final and conclusive and therefore no longer pending, still the fact remains that the lawmakers of this state in 1955 and again in 1957 rejected bills introduced in the assembly to so change and amend the law as written in sections 21-137, 93-8706 and 93-8601, and in the face of such action on the part of the lawmakers this court should not attempt to usurp the legislative functions so committed to the legislative department by our Constitution by writing into the statutes other and different provisions than were enacted by the Legislature in the year 1895 and which have since remained the law without any change, alteration or amendment whatever by the assembly.